RYDER et al. v. BATEMAN et ux.

(Circuit Court, W. D. Tennessee. October 3, 1898.)

No. 526.

1. REMOVAL OF CAUSES—POWER TO REMAND BEFORE TERM AT WHICH RECORD IS RETURNABLE.

Where, after the filing of a petition for removal, but before the first day of the next term of the federal court to which the record is returnable, application is made to such court for extraordinary relief, such as the appointment of a receiver to preserve the property, and by leave the record is filed, the court may then inquire into its jurisdiction; and if it will be without jurisdiction of the cause when the first day of the next term arrives, and especially if the suspension of jurisdiction until that time is likely to result in injury to the parties, it may at once remand the cause to the state court.

2. RECEIVER—HEARING OF APPLICATION—ANSWER AS EVIDENCE.

Though a bill waives answer under oath, a sworn answer may be considered as an affidavit, the same as the bill, on an application for a receiver.

3. GROUNDS FOR APPOINTMENT.

A receiver will not be appointed to take charge of real estate which is in the possession of defendants, and to collect the rents therefrom, on the application of complainants, who are out of possession, and seeking by their bill to establish a claim of ownership, where the only evidence before the court is the bill and the answer, which denies all the material allegations of the bill, and especially where it appears doubtful, on a consideration of the bill alone, whether the complainant is entitled to possession.

4. SAME—RIGHT OF TRUSTEE TO RECEIVER.

The fact that a complainant is a trustee, and vested with the legal title to property, does not entitle her to the appointment of a receiver therefor, as against the beneficiary, who is a married woman and in possession, where the trustee at the same time denies the trust, and asserts a hostile title to the property.

5. SAME—SUIT TO RECOVER REAL ESTATE—INSOLVENCY OF DEFENDANT.

A court is not justified in appointing a receiver for real estate, of which the defendant is in the possession and enjoyment under a claim of absolute ownership, on the application of an adverse claimant, unless there is a reasonable probability that complainant's right will be established, and that the property is in danger, both of which conditions should be established to the satisfaction of the court. In the absence of such proof, the insolvency of defendant is immaterial; and it is also immaterial whether defendant has the legal title, or the entire beneficial interest, with the bare legal title vested in a trustee.

In Equity. On application for appointment of a receiver.

The original bill sets out the will of one George P. Cooper as the source of title to the real estate involved; the plaintiff Iris C. Ryder claiming a life estate under that will, and the plaintiff Pauline A. Ryder, who is her daughter,

claiming the reversionary fee in the property under the will of her grandfather. The bill avers that many years ago the plaintiff Iris C. Ryder (in 1878) "signed, sealed, and acknowledged, and caused to be placed on record," a certain deed, conveying the property to a trustee, "for and in consideration of the natural love and affection which she, the said Iris, has and bears to her daughter Marie V. Swingley, and for and in consideration of five dollars cash in hand paid by said Adams," to have and to hold "in trust for said Marie V. Swingley forever, in fee simple, free from any and all debts and liabilities, as well as from the control of any husband she may ever have, to her only benefit and behoof." This Marie V. Swingley is the defendant, and her husband, Bateman, is the co-defendant, to this bill. The bill further alleges that the financial consideration for this deed was never paid; that the deed was never delivered; that the defendant Marie was not the offspring of the said Iris C. Ryder; that she had one child of the marriage to her first husband, A. L. Swingley, but that that child died, and the defendant Marie "was related by blood to the first husband of the complainant Iris C. Ryder, and, when a small child, was taken by complainant Iris C. Ryder and her first husband into their family, and by them raised and cared for"; that such care has been continued, she being supported out of the rents of the property, until her marriage to Bateman. The bill next alleges that by a second marriage the plaintiff Pauline A. Ryder is the only child of the other plaintiff, Iris C. Ryder, the daughter of said George P. Cooper, the testator, and that they are the sole owners of the property, under the will. It further alleges that Bateman and wife are in possession, claiming title under the deed of gift, claiming the rents, refusing, as the agents of the plaintiff, to pay them over to her, and entirely excluding both plaintiffs from all share in them, and that they are endeavoring to sell the property, and are insolvent. It prays for a receiver, for an injunction, and that the deed of gift be canceled, "as a cloud on the title of the plaintiff."

This bill was filed on or about the 28th day of May, 1898, in the chancery court of Shelby county, Tenn., after which certain proceedings were had in that court until the 2d day of July, 1898, two days before the process required the defendants to answer in that court. On that day the defendants filed their petition to remove the case to this court, in which they state "that they are both residents of the state of California, and that their home and residence was in said state of California at the time when this suit was instituted"; that petitioner Marie V. Bateman "is a citizen of said state of California, and was a citizen thereof at the time this suit was instituted"; that petitioner Louis T. Bateman "is a citizen of Great Britain, and was a citizen thereof at the time when this suit was instituted"; "that at the time this suit was instituted the complainants, Pauline Agnes Ryder and Iris C. Ryder, were both residents and citizens of the state of New York, and they both are still residents and citizens of the state of New York"; "that the defendant Louis T. Bateman is merely a nominal defendant, and is only sued in his capacity as husband of Marie V., and petitioners allege that the controversy is separable, and can be fully determined, as between your petitioner Marie V. and the complainants, without the presence of any other defendant." The necessary bond was filed along with this petition, but the record does not show that any order of the state court was ever entered, approving the bond, and directing the removal of the case to the federal court. The term of this court next ensuing after the filing of the petition for removal will occur on the fourth Monday of November, 1898. A transcript of the record was filed in the clerk's office of this court August 4, 1898,—how or by whom does not appear, but certainly without any leave of the court to that end. That transcript shows that, among other proceedings in the state court, on the 1st day of July, 1898, the day before the petition for removal was filed, the plaintiffs were granted leave to amend the bill, and given 10 days within which to file the amendment, and that on the 7th of July, 1898, after the petition for removal had been filed, the plaintiffs filed in that court the amended bill appearing in the transcript. We are informed by the brief of counsel, and the presentation of a copy of the chancellor's order, that, notwithstanding the petition and bond had been filed, the plaintiffs, ignoring the petition for removal, moved in the state court for a pro confesso, and appointment of a receiver by the chancellor. This he refused, as appears by a copy of his order presented by counsel, because the

case had already been removed to the United States circuit court, and because the insolvency of the defendants and injury to the complainants were flatly denied. Immediately after the order of the chancellor refusing the receiver, notice of this application for the appointment of a receiver in this court was served, on the 13th day of August, 1898, after which defendants filed their sworn petition asking for an order compelling the plaintiffs to produce a certain deed, known as "Exhibit D" to plaintiffs' amended bill, which they allege is a forgery, and that it was necessary for them to see the original document before they could file their answer, which they desired to use on the hearing of this application for a receiver. That application of the defendants was refused, for reasons stated in the opinion of the court heretofore filed herein.

The amended bill supplements the original bill with allegations of a somewhat different character. It avers that Nathan Adams, the trustee in the deed of gift, having died, the plaintiff Iris C. Ryder was substituted in his stead by a decree of the chancery court, upon proper proceedings instituted by her for that purpose, by a bill against the defendant Marie and the heirs of the deceased trustee, and that as such substituted trustee she is entitled to all the rights and powers vested in him, and "is alone entitled to collect the rents," etc. It then alleges that after the defendant Marie became of age, and in 1891, she executed "a deed or contract" whereby she "confirmed" the plaintiff Iris C. Ryder's "right to manage and control the said property in as full and complete a manner as she would have managed and controlled it had the deed filed as Exhibit B to the original bill not been made," and "agreed, in consideration of the gifts she had received from complainant Iris C. Ryder," that the plaintiff Agnes P. Ryder "should share with herself the rents and profits derived from the said lands." It next alleges that Bateman, the husband of the defendant Marie, is extravagant and wasteful in his habits, that he entirely dominates and controls the defendant Marie, and that, unless restrained, he will convert the entire rentals and proceeds of sale, if able to sell, to the gratification of his own pleasures, and not to the exclusive behoof, use, and benefit of Marie V. Bateman, his wife. It also alleges, as does the original bill, that Louis T. Bateman and Marie V. Bateman are entirely insolvent, and, if they are permitted longer to collect the rents on the real estate, the complainants will sustain irreparable injury. The amended bill prays for a receiver, for the same relief as the original bill, and "that on the final hearing of this cause the plaintiff Iris C. Ryder be given control and management of the property, and the right to collect the rents therefrom, by virtue of her trusteeship. Both bills waive the oath of defendants to their answer, and both the original bill and the amended bill are sworn to. The original bill alleges that Pauline Agnes Ryder, one of the plaintiffs, is a minor without a guardian, and sues by her mother and next friend, Iris C. Ryder, and that they are both residents of the city of New York, and state of New York, and that the defendants, Louis T. Bateman and his wife, Marie V. Bateman, are residents of the county of Shelby, and state of Tennessee.

After the motion for an order for the inspection of the plaintiffs' exhibit was refused, the defendants, on the 29th of August, 1898, filed their answer to the bill and the amended bill. The answer is sworn to by the defendants, and forwarded along with the transcript from the state court, to be used upon the hearing of this application for a receiver. This answer denies almost every material statement of the bill and the amended bill. It denies that under the will of George P. Cooper there was conferred only a life estate on the said Iris C. Ryder, as charged in the bill, and insists that she acquired a fee-simple title to the property she acquired under that will, and states that on the 30th day of January, 1890, by a proper decree of the chancery court of Shelby county, in the case of Severson against Ryder and others, with all the proper parties before it, and especially with both the plaintiffs and the defendant Marie V. Swingley as parties to the bill, that court construed the will as conferring upon the daughters of George P. Cooper an estate in fee, and not an estate for life, with a remainder over to their children. The answer denies that the plaintiff Pauline A. Ryder is the only living child of the said Iris C. Ryder, and that said Pauline ever became entitled, by her birth, or at any time, to any interest in said property by virtue of the will of her grandfather, as charged in the bill. It emphatically denies that Marie V.

Swingley was taken when a small child and raised and cared for by the plaintiff Iris C. Ryder, and says that she is the lawful child of the said Iris C. Ryder, born in lawful wedlock between her and her deceased husband, A. L. Swingley, and that the "respondents are pained and shocked beyond degree to have such a false assertion made and sworn to by the said Iris C. Ryder." It states that the said Iris C. Ryder has many times, in courts of justice, by her oath declared that she was the mother of the said Marie; that she has always been reputed to be the child of said Iris C. Ryder and her first husband, A. L. Swingley. It admits a deed of trust from the said Iris C. Ryder to Nathan Adams for the use and benefit of the defendant, and avers that it was properly delivered to the trustee, or in some other way, for her benefit, about the date of its execution. It sets up that the plaintiff Iris C. Ryder in February, 1872, was appointed the guardian of the said Marie, upon a bond which was then, and is now, insolvent, and that, shortly after she was qualified as guardian, the plaintiff Iris C. Ryder obtained the sum of $5,000 life insurance on the life of defendant's father, A. L. Swingley, which belonged exclusively to the defendant Marie, as his daughter; that, immediately upon the receipt thereof by the plaintiff Iris C. Ryder, she converted the money to her own use, and has never paid to the respondent any part thereof, either principal or interest, and that said sum of life insurance money, with compound interest, as under the law the plaintiff would be bound to pay, would be in excess of the value of this property; that her father left other property belonging to the respondent, which the said Iris C. Ryder also has converted to her own use. It then states that in March, 1878, immediately after the execution of the deed of settlement to Adams, the plaintiff Iris C. Ryder, as the guardian of the respondent Marie, collected the rents and profits of the real estate in controversy, and has treated the property as the property of the said Marie ever since that time. It alleges that the respondent Marie has had undisputed possession under the said deed from its date up to this time, a period of over 20 years, and pleads the statute of limitations, and the 7 years' continuous possession and 20 years of uninterrupted ownership, as a defense to any claim of title in the plaintiffs. It denies that there were any errors in the description of the property, as alleged in the bill; and, if there were, it would not avail the plaintiffs to set the deed aside. It denies that the financial consideration of five dollars was not paid. It sets up laches on the part of the plaintiffs in so long withholding this bill. It then says that the respondents never knew or heard of the existence of the "forged deed of September 28, 1891," until it was set up in the amended bill; and against any claim under it the answer again sets up the statute of limitations. The answer then denies that the respondents are attempting to sell the property, or put in any way a cloud upon or incumber the title; denies that they or either of them is insolvent, or that plaintiffs will sustain any injury by the defendants' continued possession of the property. The answer alleges that the plaintiff Iris C. Ryder during all the time of her guardianship has collected about $200 per month rent from this property, for which she has never accounted to the defendant Marie V., nor to the court that appointed her, as her guardian and trustee, but that the money has been converted to her own use. The answer then sets up that in June, 1890, the plaintiff Iris C. Ryder conveyed a large amount of property in Shelby county to her co-defendant, Pauline, and that, by a proceeding in the chancery court for that purpose, part of that property was sold, and out of the proceeds thereof the defendant Marie was allowed to borrow the sum of $5,050 upon a mortgage contract signed by the said Marie and her mother, Iris C. Ryder, at an annual interest of about $300,—the property in controversy in this suit having been conveyed under the mortgage as a security for that loan,—and that the plaintiff Iris C. Ryder joined as grantor in the mortgage in order to execute the supposed trust held by her under the provisions of the decree substituting her as trustee for Adams, the original trustee, who had died. The answer then avers that "respondents emphatically deny that the defendant Marie on the 28th day of September, 1891, or at any other time, executed a deed such as is exhibited by the purported copy thereof made Exhibit D to the amended bill." "Respondents deny that such a deed, or any deed of that character, was ever executed," and say that "the said deed is a miserable and bungling forgery, which has been prepared and concocted

by the said Iris C. Ryder with the intent and purpose of using it as a means of cheating, wronging, and defrauding these respondents." The answer pleads, as to the deed, non est factum, and then proceeds to aver "that if such a deed could have been procured from said Marie, as charged, or if the fact be found to be so, then they charge that it was procured through fraud and duress, and without a knowledge of its contents ever having been communicated to respondent Marie." The answer avers that they have made numerous and sundry applications to be permitted to see the original deed, which has been always refused. The answer says that, at the time the deed purports to have been executed, Marie had just come of age a few days previous; that her mother had been her guardian, and had received $5,000 of her interest money, and the accumulated interest thereon, and had never made any settlement with her, and besides was claiming the right to exercise constant dominion and control over the affairs of the respondent, in consequence of her trusteeship, and she thereby dominated Marie and her affairs so as to place her under great duress. The answer then says that the said Iris C. Ryder is totally unfit to act as trustee for any one, and that especially is she unfit to execute any trusts connected with respondent's interests, because "she is given to gambling in futures, and squanders the money she can get, in the bucket shops of New York." It states that she has all these years purported to act as trustee under the decree substituting her for Nathan Adams, without ever having given any bond as trustee, without ever having taken the oath of trustee, and that neither bond nor oath have been waived in the deed creating the trust. The answer denies that she is trustee under that substitution, or can claim any rights against the respondent because of it. It sets up that the plaintiff Iris C. Ryder committed a breach of her trust under that deed and decree of substitution, by conveying all the property in controversy to her co-defendant, Pauline, on the 7th day of June, 1898, and that she is seeking by this deed and proceeding to betray her trust. The answer admits that the defendants are asserting the right to appropriate and collect the rents and profits of the property, and deny that the said plaintiffs have any right or share therein. The answer alleges that the deed to Nathan Adams only created a dry and naked legal title in him, and that they are advised that the trust ceased to be an active one when the defendant Marie became 21 years of age, and, while the deed expresses the consideration of love and affection, yet the grantor, Iris C. Ryder, was then indebted to the defendant Marie, principal and interest, in the sum of seven or eight thousand dollars, and that this indebtedness constituted a part of the consideration of the deed. The answer charges that this proceeding is instituted for the purpose of placing the defendants in financial straits, through the operation of a receivership, so as to force them into terms which they could not otherwise obtain, and to further embarrass the defendants by depriving them of the means of paying the interest on the mortgage debt, so that it may be forced to a sale under that security. It states that the defendants have spent several hundred dollars in repairing the property, and have given great attention to the procurement of good tenants, that the taxes are kept paid, and the interest on the mortgage debt is kept paid, and that the husband of the respondent is not extravagant and wasteful in his habits, but is saving and economical in his conduct; and it closes by saying that the defendants are under the necessity of keeping the interest, taxes, and repairs paid, and to "reimburse themselves for expenses, and maintain their credit and character as reliable and responsible citizens, which said Iris C. Ryder has sought to destroy by a wicked and unfounded criminal prosecution, and by a receivership herein on a pretended claim of right on her part."

L. T. M. Canada, for plaintiffs.
Edgington & Edgington, for defendants.

HAMMOND, J. (after stating the facts as above). No affidavit or other proof has been filed on either side to support the remarkable statements of this original and amended bill, or the not less remarkable statements of the answer which has been filed to it;

and we are left, on this application for a receiver, to determine the question upon these bare statements alone.

The slightest inspection of this record shows that there are the gravest questions of our jurisdiction, both as relates to the parties and the subject-matter, under the acts of congress regulating removals from the state courts of suits between citizens and aliens, and forbidding the federal equity courts to entertain jurisdiction where there is a plain, adequate, and complete remedy at law. Acts 1887–88, cc. 373, 866, § 2 (24 Stat. 552; 25 Stat. 433); 1 Supp. Rev. St. pp. 611, 612; Rev. St. § 723. Nor are these questions any less intricate when complicated with the irregularities of practice that have taken place in this case by filing an amended bill in the state court after the petition and bond for removal had been filed; by filing the record in this court, without any application or leave of the court, before the time prescribed by the removal act for its transmission to this court; by filing the defendants' answer without like leave to file the record here; and by submitting this motion for a receiver upon an irregular record, with no proofs, by affidavits or otherwise, in support either of the bill or the answer, the oath to which is waived; the bill and answer being also flatly contradictory in almost every statement, and especially as to the "residence" of the defendants seeking to remove the case, so essential, under the act of 1887, to be established for purposes of jurisdiction by removal under that act. The bill says they are residents of Shelby county, Tenn., and the petition for removal says they are residents of California,—oath against oath. The petition for removal also avers that the defendant husband is, and was at the time suit was begun, "a citizen of Great Britain," and the wife a citizen of California; and it is by no means certain that this is a sufficient description of his national character, though the case may be distinguished, probably, as to that expression, being the equivalent of the more technical form of ancient usage,—"an alien, and a subject of the queen of the United Kingdom of Great Britain and Ireland," or "an alien, and a subject of the kingdom of Great Britain." Stuart v. City of Easton, 156 U. S. 46, 15 Sup. Ct. 268. Besides this, it has not yet been definitely settled, so far as we are advised, whether or not the defendant wife by her marriage to an alien has not herself become an alien, at least so far as the right to sue, and the liability of being sued, in the federal courts are concerned. Pequignot v. City of Detroit, 16 Fed. 211; Comitis v. Parkerson, 56 Fed. 556. It also appears that the plaintiffs are citizens of New York, so that the suit is one in which none of the parties are citizens, inhabitants, or residents of the state in which the land in controversy lies, and in which the suit is brought, if the removal petition states the truth, but citizens of another state are suing defendants, who are both aliens, it may be; and, while the petition says they are "residents" of California, the bill says they are "residents" of Tennessee. Cooley v. McArthur, 35 Fed. 372; Cudahy v. McGeoch, 37 Fed. 1; Walker v. O'Neill, 38 Fed. 374; Sherwood v. Valley Co., 55 Fed. 1. Is an alien a "resident" of any state, within the purview of this act of congress? Steamship Co. v. Kane, 170 U. S. 100, 18 Sup. Ct. 526; Railway

Co. v. Gonzales, 151 U. S. 496, 506, 507, 14 Sup. Ct. 401. The petition for removal asserts a separable controversy, and that the husband is only a nominal party; but is that possible, when a husband and wife are charged as joint trespassers, withholding the possession of real estate from the plaintiffs, claiming to be the rightful owners? Starin v. City of New York, 115 U. S. 248, 6 Sup. Ct. 28; Anderson.v. Watt, 138 U. S. 694, 11 Sup. Ct. 449.

The questions arising under Rev. St. § 723, as to an adequate remedy at law, are quite as complex as any above noted: Whether, if this be a bill "to remove a cloud" from the title of the plaintiffs, they can sustain it, being out of possession. Lacassagne v. Chapuis, 144 U. S. 119, 12 Sup. Ct. 659; Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276; Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712. Whether the filing of an answer has waived this objection. Reynes v. Dumont, 130 U. S. 355, 9 Sup. Ct. 486; Kilbourn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594; Betts v. Lewis, 19 How. 72; Reynolds v. Watkins, 9 C. C. A. 273, 60 Fed. 824; Wait v. O'Neil, 22 C. C. A. 248, 76 Fed 408; Id., 72 Fed. 348. Whether it is in fact a bill to remove a cloud, and not maintainable, or is in fact a bill to rescind one's deed of gift for want of consideration, or (taking the irregularly filed amended bill into consideration) a bill to enforce the devises of a will, or one to enforce the trusts of a settlement by deed of gift to protect a married woman, or the specific performance of a contract to share the "proceeds" of real estate, and for its "management and control," and therefore maintainable, in some of these aspects, under the general prayer for relief, although not under the special prayer to remove a cloud. Inconsistent as these many-sided claims for relief may be, under a general prayer, there being no demurrer or plea to the jurisdiction, whether or not, again, the filing of the answer has not waived all objections in that behalf; a plea only being appropriate to present the antagonistic facts set up in the answer as against the jurisdiction of a court of equity to entertain the bill in any aspect. This opens a rather wide field of inquiry as to the effect of Rev. St. § 723, on a bill so inartistic as this, and so destitute of any interpretation by its prayer of what is wanted in the way of relief, except that a receiver is wanted, as if that might be the main purpose of the bill, instead of an incidental purpose, dependent upon a fairly made out case of prima facie right to the property, through established methods of equitable relief or remedy, and not a mere action at law to recover a possession wrongfully withheld, which an action of ejectment would remedy, in some of its aspects, at least. Where is the legal title to this property, in the view of the bill? Clearly, in the plaintiffs,—one or both. Then why would not ejectment lie? If one out of possession cannot, in a federal court of equity, maintain a bill to remove a cloud from the legal title, particularly when the alleged cloud is one's own deed, not denied as to its execution, but only as to its effect, there being a failure of consideration, if the question of jurisdiction be open, notwithstanding the answer, shall the case be remanded to the state court, if such a jurisdiction may be exercised there, be docketed here on the law side as an action at law rightfully removed, upon a rule

to replead, or be dismissed without prejudice to bringing an action at law? These are all perplexing questions, not very easy of solution. on a record such as is now presented. Yet, under the strict command of section 5 of the act of 1875, still in force, that if at any time it shall appear, no matter how, that the court has no jurisdiction, the suit shall be dismissed or remanded by the court on its own motion, it is always the duty of the court to look to the jurisdiction and determine it. Act 1875, § 5 (18 Stat. 472); 1 Supp. Rev. St. p. 83; Morris v. Gilmer, 129 U. S. 315, 325, 9 Sup. Ct. 289; Cameron v. Hodges, 127 U. S. 322, 326, 8 Sup. Ct. 1154; Graves v. Corbin, 132 U. S. 571, 590, 10 Sup. Ct. 196; Crehore v. Railway Co., 131 U. S. 240, 9 Sup. Ct. 692. So, when an application is made for the appointment of a receiver, it becomes all the more necessary to look immediately to the question of jurisdiction, lest, if one be appointed, other perplexities arise, that might embarrass the court, if it should turn out there was at the beginning no jurisdiction of the case. Electrical Supply Co. v. Put-in-Bay Waterworks, Light & Railway Co., 84 Fed. 740; Gumbel v. Pitkin, 124 U. S. 131, 8 Sup. Ct. 379; Compton v. Jesup, 15 C. C. A. 397, 68 Fed. 263.

The question whether the court or judge may or shall remand the case for want of jurisdiction on the occasion of an application for a receiver, or other extraordinary action, made in the time intermediary from the filing of the removal petition in the state court to the first day of the next term of the federal court, to which alone the record is returnable, by the very terms of the statute, has never been authoritatively decided, so far as I am aware. Rev. St. § 639; Act 1875, § 7 (18 Stat. 472); 1 Supp. Rev. St. p. 83; Acts 1887, 1888, § 3 (24 Stat. 552; 25 Stat. 433); 1 Supp. Rev. St. pp. 611, 613; Frink v. Blackinton Co., 80 Fed. 306; Hamilton v. Fowler, 83 Fed. 321.

Nevertheless, it would seem that, if the court within that time may take extraordinary jurisdiction for extraordinary purposes, it might and should then and there remand the case, if it have no jurisdiction, without pretermitting that fundamental inquiry to a later date; especially if the parties were likely to suffer injury by a long delay between terms, as in this case of quite five months between the two dates. The rigid rule that the federal court can acquire jurisdiction only strictissimi juris, that its jurisdiction is defeated unless the record is filed strictly according to the statute, and that it has no power to proceed, or authority over the case, generally, until that date arrives, must, ex necessitate rei, yield to the circumstance that the injury of a suspension of jurisdiction between the two courts, as if between the heavens and the earth, may involve the parties in serious loss, and the court in the embarrassment of appointing a receiver where there is no jurisdiction to do anything at all in the premises, instead of remanding the case at once to a court competent to deal with that question without any embarrassment. Either the relief that comes of remanding the case under such circumstances must be classed with that of granting injunctions, dissolving them, appointing receivers, and the like, as extraordinary relief, which, like the others, the court may grant, within the time, as of necessity, against the general rule, or else section 3 of the act

of 1875, as amended by the acts of 1887 and 1888, requiring the record to be filed at the next succeeding term of the federal court, must be construed, pari passu, with section 5 of the act of 1875, and in the light of the always established rule that the federal court might take intermediate and extraordinary jurisdiction for the purpose of preserving the property, and the like, and for that purpose, if circumstances demand it, may at that time remand the case, if there can be no jurisdiction acquired when the first day of the next term arrives,—if the jurisdiction be impossible by any further action to be taken in the case, and the filing of the record at the statutory time cannot confer or complete it. Why should the case be longer held, if there can be no jurisdiction? True, this question, perhaps, should be asked rather of congress than the courts; but by construing the two sections, as above suggested, for the common good of the general scheme of the statute, we may hold that the one is modified by the other, so that, if, by leave of the court, for some extraordinary purpose, on the application of either party, the record be filed before the first day of the next succeeding term of the federal court, that court also acquires jurisdiction then and there to remand the case, if it can have no jurisdiction of it, and, in obedience to the fifth section of the judiciary act, must remand it. In the case of Respublica v. Betsey, 1 Dall. 468, 478, the word "not," in a statute, was eliminated on this principle of construction, the court remarking that:

"In the construction of statutes, too, judges have sometimes gone contrary to the general words of it. They have expounded the words of an act contrary to the text, to make it agree with reason and equity."

Again, in Levinz v. Will, 1 Dall. 430, 433, while construing statutes, the court observes that:

"In doubtful cases, therefore, we may enlarge the construction of an act of assembly, according to the reason and sense of the lawmakers, either expressed in other parts of the act itself, or guessed by considering the frame and design of the whole." Citing Arthur v. Bokenham, 11 Mod. 161.

If the act, therefore, may be so enlarged as to take jurisdiction before our term for some extraordinary purpose, it may be so enlarged as to effectuate that same purpose by some other extraordinary relief, if need be.

The foregoing questions as to our jurisdiction have engaged, therefore, my serious attention, with the purpose of immediately remanding the case, if it should be found that we certainly were without any jurisdiction of it, and that it ought to be remanded. But, as now advised, it seems that we have jurisdiction both of the parties and of the subject-matter, as a court of equity. However that may be, for the present the jurisdictional questions are reserved for the progress of the case, as the parties may be advised in the premises. For the purposes of this application, the bill will be treated as well filed in equity, at least for the purpose of letting an equitable, if not a legal, joint tenant into the enjoyment of her share of the rents and profits under the deed from the feme defendant to the plaintiffs. It is true that an action of debt or assumpsit might lie for any share of the rents collected and wrongfully withheld, but

this would scarcely be adequate or complete, and would require a constant bringing of suits as fast as the rents were collected. Besides, for the present the answer will be treated as a waiver of all objections on the score of a want of equity in that behalf, as well as to the whole bill. In that view, this would be technically a bill for the specific performance of that deed or contract. Apart from that deed, the suit is a mere struggle over the legal or equitable title by claimants out of possession against one in possession under a deed especially good against the plaintiffs, if it be good at all, as against the averments of the bill. And this is the best attitude of the case as presented for the plaintiffs on their application for a receiver.

The bill is sworn to, and there is not an item of proof otherwise offered in support of the application for a receiver. Concede that it may be used as an affidavit in support of the application, and it is fully met by the sworn answer of the defendants, which flatly contradicts every essential statement of the bill. The oath to the answer is waived, and it is thereby, perhaps, even on an application for a receiver made by the plaintiff, shorn of the ordinary force of an answer in chancery as proof on all the issues of the case. Yet it is as good as the bill, as an affidavit, and then we have an exact equilibrium of proof as to the facts,—oath against oath, and nothing more on either side. But the one is the oath of a claimant of ownership in possession, in support of that possession; and the other, of a claimant out of possession, seeking to establish an adverse claim of ownership. The circumstances of this possession do not distinctly appear. The bill says—incidentally, somewhat—that plaintiff Iris C. Ryder, on account of her devotion to defendant Marie, "has permitted her and her husband to act as the agent" of the plaintiffs "in the collection of the rents, permitting the said Marie Bateman and Louis T. Bateman to enjoy a portion of said rents when so collected"; that this was their only means of livelihood; that they have taken advantage of this "generosity," and now set up an exclusive right to the property under the deed of gift, denying all right of plaintiffs, having "accounted to complainant for an insignificant amount of the rents they have collected." The answer treats this part of the bill somewhat obscurely, and sets up adverse possession in defendant Marie ever since the deed of gift, about 20 years, that the possession of the plaintiff was held as guardian or trustee for the defendant Marie, that she has never accounted to defendant, but has appropriated the money largely to her own use, and misappropriated much of it by "gambling in the bucket shops." The result of this, as evidence, is that the defendants substantially deny any agency, and claim the possession as one in their own right; and again it is only oath against oath, with the burden of proof on the plaintiff. Thus it is with all the important facts,—as to the proof of them, the burden of proof being always on the plaintiffs, it must be remembered. The bill says that the original deed of gift was never delivered. The answer says it was. The fact that it went to record appears, and is not denied, which is a corroborating circumstance, if not a conclusive one, in favor of delivery, standing

by itself, and unexplained by any facts to deprive this fact of its legal effect as a delivery. So, take the averment of the bill that the plaintiff Iris O. Ryder is not the mother of the defendant Marie. It is denied by the answer, and denounced by the defendants as "a horrible perjury." Naturally, the plaintiff best knows how this fact is. Just as naturally, there should be other people who either know the fact specifically, or of other facts to corroborate the plaintiff's statement that the defendant Marie is not her child by birth. Yet we are asked, without the least corroborating proof, to oust the defendant of her possession and enjoyment upon this bare statement of the plaintiff, against the fact that the very deed itself recites that she is the mother of the donee, and, according to the statements of even the bill itself, has conducted herself as such. Moreover, the fact is of a character, formidable as it seems and may be in relation to the will of George P. Cooper, and the right of defendant to claim under it as his grandchild, that is not controlling as against the defendant's title under the deed of gift; for the consideration of natural love and affection may attach in behalf of an adopted child as well as of one's own child, and, if the fact stated as a basis of that consideration be false, nevertheless the deed may be good, and the grantor be estopped by the deed itself to deny it.

Coming now to the plaintiffs' claim under the will of their father and grandfather, it appears by the bill that at the very least the plaintiff Iris C. Ryder had a life estate in this property, which passed under her deed to the defendant, and that of itself will support her possession as a rightful one, until the deed of gift is rescinded by a decree on this bill; and the real question, on the application for a receiver, is whether it appears probable that the deed of gift will be rescinded at the hearing upon the proof offered to sustain the application. The plaintiffs must show at least a prima facie case of right by the proof adduced. The want of it has already been pointed out; but, more, if the facts stated for rescission should be proved at the hearing, it is very doubtful if they would sustain a decree for rescission, except as to the fact of nondelivery, and, as to that, the bill contains no averment of a single circumstance to militate against its delivery for record, as before pointed out. Again, the answer sets up the fact that a court of competent jurisdiction, with these plaintiffs and defendants before it, has construed the grandfather's will to have devised to the plaintiff Iris C. Ryder, not a life estate, with remainder to her children, but an absolute estate in fee. A certified copy of this decree is not furnished here, and possibly the mere statement of the answer is not proof of the fact; but it presents an issue of fact, at least, which, as an issue, may be considered on this application as to the probability of plaintiffs' success at the hearing.

The amended bill presents a claim by the plaintiff Iris C. Ryder to be let into possession as a substituted trustee for Adams, the original trustee, who has died. For the present application it is sufficient to say that, on the case made by the bill alone, it is scarcely possible that a court of equity would install as trustee for a married woman one who denies the title of the beneficiary, repudiates

the trust, and sets up for herself and another an adverse and hostile title. Indeed, on the application of the married woman, such a trustee probably would be removed, if in possession, and another, more friendly to the trust and the beneficiary, substituted. Nor can the plaintiff, under those circumstances, assume the attitude of the next friend of the beneficiary, to protect her against the alleged extravagance of her husband, if that could be, under such a trust as the deed creates, a ground of equitable interference with the ordinary right of one having the whole beneficial estate, to do with its income as she might please.

The disputed deed from the defendant to the plaintiffs presents an altogether better claim for them to be let into possession for at least their share of the rents. It is very peculiar in its form, and may be of doubtful construction as to its legal effect. As a mere contract to allow the plaintiff Iris C. Ryder "to manage and control" the property, as it is suggested by the amended bill to be, it may not be irrevocable by the defendant, notwithstanding its agreement that it shall be "irrevocable"; for surely no court of equity would enforce such an agreement, when the "management and control" were in the hands of one who since its execution had set up adverse claims to the property, denying not only the title of the grantor, but its effect as reserving anything by it to herself. Courts of equity do not compel any one to keep, on the score of agency, their property rights, whatever they may be, in the control of hostile agents or trustees claiming for themselves against the trust or agency, and may even relieve against a contract to that effect, as unconscionable. But even if the deed goes further, and reconveys to Iris C. Ryder the estate she held before, still it plainly reserves to the defendant a share of the property; and, as before, a court of equity will not compel one co-tenant to submit absolutely the control to another co-tenant, who denies all share to the other, or all interest, as the plaintiff does here. And yet that control is the relief asked by the bill. It is precisely on this principle that the defendant cannot keep possession, absolutely, if that deed be valid; and for precisely that reason, if the alleged danger by insolvency, extravagance, and wastefulness were proved, a receiver should be appointed, and would be, if the execution of the deed had been admitted by the answer. But, as always before, the answer denies the existence of the deed, avers it is fabricated and forged; and again there is only oath against oath as to the fact, with the burden of proving it on the plaintiffs. The deed itself is not exhibited, but only a copy, and it appears by the answer that the plaintiff refuses to disclose it and to allow the defendants to see it; and by other proceedings in the case it appears that she puts the defendants to their bill of discovery to obtain a sight of the original document, as she has a right to do, according to our decision herein. But, notwithstanding that right, the fact that the document is withheld is to be taken as a suspicious circumstance against the plaintiff on this application. The ground for withholding it is stated to be that the defendant Louis T. Bateman is not a proper person to have possession of papers, but, if that be so, the danger could be guarded, according to the practice, by depositing the deed with the

clerk, into whose keeping it would remain during the process of inspection. Another suspicious circumstance, which, until explained, must have its effect on the hearing of this application, is that this deed, Exhibit D to the amended bill, alleged by respondents to be a forgery, was not mentioned in the original bill as a source of right or title in the plaintiffs, or referred to in any way, and is for the first time mentioned in the amended bill. That is a peculiar fact in the case. So, if the case is to be one of strategetical maneuvers on the chessboard of litigation by parties mutually distrustful of the common honesty of each other, the courts can aid neither litigant, except by keeping within the strict lines of legal remedy and procedure. There is no proof on this application of the existence of the deed whereby the plaintiffs claim a share of the rents and property, except their oath, and that is met by the oath of the defendants of its nonexistence. It is not on such proof that courts of equity appoint receivers, which are not to be had for the mere asking.

The alleged insolvency of the defendants is denied, and there is no proof of it, nor of any fact or circumstance from which it may be inferred,—again, mere oath against oath of interested parties. But no allegations of insolvency can strengthen the application, under the circumstances above set forth. If the property belongs to the defendants, they are shown by its ownership not to be insolvent, in the sense of having no property at all; and it is not to be held that every man is to keep enough property, outside of that which is claimed adversely, to protect him from being ousted by a receiver from that which he has. The bearing of the fact of insolvency is often misunderstood on an application for a receiver, and often, erroneously, it is supposed to be controlling. An insolvent party has the same right as another to enjoy his own until a better title is displayed. If a plaintiff sets up a case where the defendant is under some sort of obligation to pay over the rents to some one else, and he be insolvent, that fact might be controlling, perhaps; but not if he claims as owner, and is in possession and enjoyment as owner, absolutely. Then, if his right of ownership be challenged, the plaintiff must show something more than the challenge, to be entitled to a receiver pending the litigation. He must show a probably better right of ownership; otherwise insolvency is quite immaterial. If the corpus be in danger, there might be a better claim against an insolvent in possession of disputed property. Here the answer denies all charges of mismanagement; avers that taxes and mortgage interest are promptly paid, and repairs kept up as required.

One cannot read this bill and answer without the suggestion that it may have been improvident that the mother or foster mother, as the fact may be, should have given this large and valuable property to her child or foster child, subjecting herself to possible deprivation through that ingratitude of a thankless child which is "sharper than a serpent's tooth"; but, bitterly as she may now regret the deed, the courts cannot revoke the gift, beyond the rules of law. The deeds of grantors and donors must operate according to their terms, and cannot be rescinded because of the neglect of filial duties

by children; courts dealing only with their legal duties or obligations.

In the case of Sage v. Railroad Co., 125 U. S. 361, 376, 8 Sup. Ct. 891, Mr. Justice Harlan observes that:

"Whether a receiver shall be appointed is always a matter of discretion, to be exercised sparingly and with great caution, * * * and always with reference to the special circumstances of each case as it arises."

The case of Owen v. Homan, 3 Macn. & G. 378, 4 H. L. Cas. 997, is perhaps the leading case on this subject, and is appropriate here. It is there said that:

"The granting of a receiver is a matter of discretion, to be governed by a view of the whole circumstances of the case,—one most material of which circumstances is the probability of the plaintiff being ultimately entitled to a decree."

In another case (Bainbridge v. Baddeley, 3 Macn. & G. 413) it is said there are two grounds only for appointing a receiver:

"(1) That there is a reasonable probability of success on the part of the plaintiff; and (2) that the property, the subject of the suit, is in danger."

In Vose v. Reed, 1 Woods, 647, Fed. Cas. No. 17,011, Mr. Justice Bradley lays down substantially the same rules for the guidance of the courts as found in the other cases.

Chancellor Kent, in Verplank v. Caines, 1 Johns. Ch. 58, remarked that:

"The court ought not to interfere pending litigation, when the plaintiff's right is not perfectly clear, and the property itself, or the income arising from it, is not shown to be in danger."

That is the universal rule in cases like this,—reasonable probability of plaintiff's right, and danger to the property, established before the hearing by sufficient proof to satisfy the court of both these conditions.

And in Houlditch v. Lord Donegall, 1 Ball & B. 402, it has been observed:

"That such interference is, to a certain extent, giving relief,—in fact, depriving the defendants of a present use and enjoyment of the estate, and so far a decision pro tempore against them; and therefore, without some strong necessity, the court ought not to do any act to disturb the existing possession, until, from a view of the whole case by a regular adjudication, it can pass upon the right." Willis v. Corlies, 2 Edw. Ch. 281, 286.

In Baird v. Turnpike Co., 1 Lea, 397, the court, in determining whether a decree appointing a receiver may be superseded, remarks that such an appointment is extraordinary process; that ordinarily it cannot be superseded by the appellate court, unless "it would affect possession which is itself a right," where the contest is over the legal title to land; and the intimation is that in such a case there is the want of power to appoint a receiver. Possibly that may be going too far, but it shows with what solicitude courts protect the possession of one having a prima facie right to it, against a plaintiff who does not show a better prima facie right at the time of the application.

In Richmond v. Yates, 3 Baxt. 204, there was a supersedeas of an interlocutory decree appointing a receiver of the rents on the application of a defendant, as against a plaintiff who was in possession, in a controversy as to the real owner of the land. The court says:

"It is a contest as to the title of the land, the complainant being in possession; and, until it is determined at the hearing that her title is invalid, she cannot be disturbed in her possession." 2 Daniel, Ch. Prac. (6th Ed.) 1715, 1718, 1720, 1725.

This author notes that:

"A receiver may be appointed against a party having possession under a legal title. Thus, where fraud can be clearly proved, and immediate danger is likely to result, if the intermediate possession should not be taken under the care of the court, a receiver may be appointed."

For which he quotes in the notes Lord Eldon's observation to that effect in Lloyd v. Passingham, 16 Ves. 70; saying, also, that "the court interposes against the legal title with reluctance."

This doctrine is approved by the supreme court in Wiswall v. Sampson, 14 How. 52, 64, where it is thus stated:

"If the person holding the legal interest is not in possession, the equitable claimant against the property is entitled to the interference of the court, not only for the purpose of preserving it from waste, but for the purpose of obtaining the rents and profits accruing, as a fund in court to abide the result of the litigation. And the court will also appoint a receiver, even against a party having possession under a legal title, if it be satisfied such party has wrongfully obtained that interest in the property. Thus, where fraud can be proved, and immediate danger is likely to result, if possession pending the litigation should not be taken by the court in the meantime."

The text writers are equally explicit on this subject, and cite innumerable cases following the lead of those already cited here. High, Rec. §§ 19, 20, 591–603, et seq.; Beach, Rec. §§ 5, 7, 67–70, 72, 480–484, 486, 488, 489; 3 Pom. Eq. Jur. §§ 1330–1335; Beach, Mod. Eq. Jur. §§ 931, 933, 936, 941; Beach, Mod. Eq. Prac. § 720.

The case of Hugonin v. Basely, 13 Ves. 105, wherein a receiver was appointed, has some features quite similar to this case, but the distinctions between the two are apparent. A widow, with an estate in Jamaica, lamenting her destitute condition, without consideration executed a conveyance to her clergyman, as a friend she could trust to manage her affairs; reserving for herself only an annuity of an amount about equal to the rental value. Lord Chancellor Erskine was embarrassed by the fact that the legal estate and possession were with the defendant, but there being "a very strong probability that the plaintiff had the title to call back this estate, and because of the suggestion of counsel that one standing in the capacity of a trustee could not take a bounty from the cestui que trust without great suspicion of undue influence," appointed a receiver pending the litigation. That was a case of a donor seeking to recover the estate from a donee who was at the same time trustee for the reserved interest, upon the ground of undue influence. This is the case of a donor without any reserved interest seeking to recover from the donee, for whom at the same time she is a trustee, upon the ground that the donee is not in fact the donor's daughter, as the

deed recites, and of a subsequent reconveyance by the donee which. is denounced a forgery.

Mr. High in his work on Receivers, as do the other authors cited, states that the insolvency of a defendant in possession does not of itself warrant the court in appointing a receiver, but, in addition, it must appear that the plaintiff has a probable right to recover in the end. High, Rec. § 18, citing Gregory v. Gregory, 33 N. Y. Super. Ct, 39; Lawrence Iron-Works Co. v. Rockbridge Co., 47 Fed. 755.

Recurring now to the quotation from Mr. Justice Nelson's exposi-tion of the principles governing the application for a receiver in a case like this, in Wiswall v. Sampson, supra, it is apparent that the defendant has not the legal title, strictly and technically considered, perhaps, but she has the "legal interest," to use his words,—chosen, no doubt, to accurately express the fact, running through the authori-ties, that the protection of the defendant in possession does not depend on the bare technical legal title, but on the right to enjoy the income or profits of the estate as the owner thereof; and, united with her trustee, the defendant has that, if her deed is good, both as to the legal and equitable interest. She may be separated from the bare legal title, but otherwise she has the entire interest, under the terms of her deed. It is not necessary to inquire whether the trus-tee under that deed had anything more than "a dry trust," or whether the effect was to give her a legal title. Certainly he has no active duties imposed by the terms of the trust. She has, in my opinion, the same standing in a court of equity, .on an application like this, and under the peculiar circumstances of this case, as if she stood here with the legal title, or as if she and her trustee were both standing here, in possession. It is not to be overlooked that one of the plain-tiffs is the substituted trustee of the deed of settlement and gift, but, as already pointed out, she is a hostile trustee, denying her own title as trustee, and the defendants' interest under the trust, by denying the validity of the deed, and seeking to set it aside. She cannot claim under it and against it, and if she were in possession, making such claims of adverse ownership as she makes here, a court of equity would remove her as trustee, or appoint a receiver against her, on the ap-plication of the defendant or her next friend. Therefore she can claim nothing as to a receiver on that score, but her application must stand on the merits of the hostile claims of adverse title she sets up by this bill. The application for a receiver must be denied. Ordered accordingly.