REYNOLDS et al. v. WATKINS et al.

(Circuit Court of Appeals, Sixth Circuit. March 6, 1894.)

No. 115.

1. APPEAL—ADEQUATE REMEDY AT LAW.
   Where the objection that there is an adequate remedy at law is taken for the first time on appeal, the court is not obliged to entertain the same, where the subject-matter of the suit is of a class over which a court of chancery has jurisdiction.

2. INTERPRETATION OF DEED—FAMILY HOME.
   A purchaser of real estate took a deed to himself, for the use and benefit of his wife and children, the sole object being to provide a family home. He subsequently obtained a divorce, the decree providing that he should be discharged from any apparent trust growing out of the deed. *Held*, that the decree was conclusive that the children were not tenants in common; that the beneficial interest of the wife and children ceased when they left the home; and that, therefore, a subsequent sale by the father to pay off mechanics' liens for improvements, of which sale he obtained confirmation by a chancery court on publication against his children, who were then nonresident minors, divested any possible interest remaining in them, even if the publication was defective.

Appeal from the Circuit Court of the United States for the Southern Division of the Eastern District of Tennessee.

This was a bill in equity, brought by Francis T. Reynolds, Rowena Reynolds, and Alma Reynolds against Anna N. Watkins and

others, to assert an alleged interest in certain real estate. There was a decree below dismissing the bill, and complainants appeal.

John D. Little, A. G. Wimbish, W. H. Bogle, and Lewis Shepherd, for appellants.

Clark & Brown, Wheeler & McDermott, and White & Martin, for appellees.

Before TAFT and LURTON, Circuit Judges, and RICKS, District Judge.

LURTON, Circuit Judge. The complainants are the sole surviving children of a marriage between John F. and Elizabeth J. J. Reynolds. They claim that, under a certain deed made by one Joseph Ruohs in 1869, they have an interest in certain valuable property situated in the city of Chattanooga, Tenn., and now in the adverse possession of the defendants. No question of jurisdiction was raised in the circuit court, but it is now, for the first time, insisted that complainants had a plain and adequate remedy at law, and that, therefore, a court of equity will not entertain this suit. An objection that the remedy at law was plain and adequate should be taken at the earliest opportunity. Yet neither consent nor negligence will confer jurisdiction in equity where none really exists, and the court may at any stage of a cause entertain such objection, or dismiss a bill mero motu. Yet there are cases where, if the objection of want of jurisdiction because of an adequate remedy at law be not taken in the circuit court, and be for the first time presented upon appeal, this court will not feel itself obliged to entertain an objection coming so late, especially if the subject-matter of the suit is of a class over which a court of chancery has jurisdiction, and it is competent for the court to grant the relief sought. Reynes v. Dumont, 130 U. S. 355, 9 Sup. Ct. 486; Kilbourn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594. Looking to the whole of the original bill, including the transcripts of two suits in equity involving and affecting the title and interest of complainants, and filed as exhibits to the bill, we are of opinion that the interest of the complainants was so essentially of an equitable character as to constitute a controversy over which a court of equity may well assume jurisdiction. The foundation of the interest asserted by complainants is a deed made by Joseph Ruohs and John F. Reynolds, father of complainants. That deed was in these words:

"In consideration of sixteen hundred dollars, of which sum one thousand dollars is paid in hand, and three notes of this date bearing interest from date, each for two hundred dollars,—one due six months after date, and one due at twelve months after date, and one due fifteen months after date,—I, Joseph Ruohs, have this day bargained and sold, and do hereby transfer and convey, unto John F. Reynolds, in trust, for the sole and exclusive use and benefit of Elizabeth J. J. Reynolds and her children, the following described lot or parcel of land in Chattanooga, Hamilton county, Tenn.: Lot number twenty-two (22) Oak street, fronting one hundred feet on Oak street, and running back, of uniform width, to McCallie street, situate in McCallie's addition, and being the lot conveyed to Henry K. White and Elizabeth B. White, and conveyed by them to Joseph Ruohs. To have and to hold said property or lot to the said John F. Reynolds, in trust, for the sole and exclusive

use and benefit of the said Elizabeth J. J. Reynolds, and his heirs, forever, free from the contracts and liabilities of her present or any future husband. I further covenant that I am lawfully seised of said lot, have the right to convey it, and that it is unincumbered; and I further bind myself to warrant and forever defend the title to said lot to the said trustee, forever, against the lawful claims of all persons whatever. It is further provided and stipulated that said trustee may sell and convey said lot, for the purpose of changing the investment, upon the written request of said E. J. J. Reynolds, and a lien is retained upon said lot for the aforesaid unpaid purchase money.

"This June 1, 1869.

"[Seal.]                                              Joseph Ruohs.

"Attest:

"J. K. Kuan.

"D. M. Key."

The children of Elizabeth Reynolds, then living, were four in number. One died subsequently,—a minor, unmarried, and intestate. The other three are the complainants.

Did Mrs. Reynolds obtain any legal estate by that deed? What were the rights and interests of complainants thereunder? Were those rights legal or equitable? Did they become tenants in common with their mother, as now insisted? These questions, we think, were all answered in a most conclusive way by the chancery court of Hamilton county, Tenn., in 1872. Their father in that year filed an original bill in equity against their mother, Elizabeth Reynolds, and against themselves. The object of the bill was to obtain a divorce from Mrs. Reynolds upon the ground that she had abandoned her husband, home, and family, and was living in adulterous cohabitation with a lover in a distant western state. He also sought to have the court construe the Ruohs deed, and determine his rights and interest thereunder, and the rights and interests of Mrs. Reynolds and her children. He set out that he had paid the entire consideration for the conveyance, and had, with the approval of his wife, built on and improved the property as a home and residence; that he had personally paid for much of the improvement; and that much remained unpaid, for which mechanics' and furnishers' liens existed. He claimed that the whole arrangement was solely for the purpose of providing a home for himself, his wife and children, so long as they chose to avail themselves of it, and so long as the family relation existed. Publication was duly made for Mrs. Reynolds, as a nonresident. Her children, the complainants, were regularly served with process, and answered by guardian ad litem. Evidence was taken, and upon the hearing the court decreed: (1) That the bonds of matrimony were dissolved. (2) As to the rights of Mrs. Reynolds and her children under the Ruohs deed, the court said:

"That said Elizabeth J. J. Reynolds never had any real interest in either the purchase money or the lot; that the whole transaction—the deed and property—has been all the time under the control and power of complainant, and that the language in which the deed to said lot is couched was an ex parte arrangement of complainant, and that the object and purpose of the said deed being so drawn was to provide a family home and residence for the use and enjoyment of complainant and said Elizabeth J. J. and their children whilst the relations of husband and wife, mother and child, and father and child existed, and to be so used and enjoyed; and that said Elizabeth J. J. should

not continue to have or possess any interest in said property beyond the period of duration of the existence of such relation, and actual use and occupation of the same as a wife and mother, as aforesaid. And the court being of opinion that upon the abandonment of complainant and her said children, and elopement in adultery, by said Elizabeth J. J. Reynolds, as hereinbefore shown, that the said Elizabeth J. J. forfeited, or ceased to have, any other or further interest in said property, as such conduct, from the proof in the cause, terminated the limitation or duration of the said estate in trust for her, as appearing on the face of said deed, it is therefore, upon that branch of complainant's bill, decreed by the court that the limitation of all such estate, in equity or otherwise, as said Elizabeth J. J. Reynolds had or took under said deed of conveyance from Joseph Ruohs, No. 22, in Chattanooga, Hamilton county, Tennessee, on Oak and McCallie streets, executed on the 1st day of June, 1869, ceased to exist, and all such interest is forfeited, and that the apparent relationship of trustee and cestui que trust growing out of said deed be, and the same is hereby, declared at an end, and complainant denuded and discharged of any such apparent trust. And it further appearing that complainant has improved said lot by erecting a valuable family residence, at a cost of about three thousand dollars, the said house and lot will be used and enjoyed by him in such manner, for the benefit of himself and said children, as, in his judgment, he may decide right and proper, without being in any way accountable or liable to said Elizabeth J. J. Reynolds, or any one claiming under her."

That decree stands unreversed, and is not attacked by the present bill. With respect to that decree the contention of complainants, in their pleadings, is that it "does not purport to divest and vest title in said property, excepting as to the interest of said Elizabeth J. J. Reynolds, nor does it purport to construe or reform said deed in any way, or in any manner alter or disturb the interests in said property, as acquired thereunder by said children." To this we cannot agree. The court did construe the deed. It could only declare the extinguishment of Mrs. Reynold's interest thereunder by construing the legal and equitable rights of the beneficiaries. Looking to the circumstances under which that conveyance was made, and looking to the language in which the purposes of the conveyance were declared, the court held that "the object and purpose of the deed was to provide a family home * * * for the use and enjoyment of the said Elizabeth and their children whilst the relationship of husband and wife, mother and child, and father and child existed, and to be so used and enjoyed." This being the purpose of the deed, the court held that Mrs. Reynolds' rights and interest had terminated by the abandonment of the home, and of her relations to the family, and had thereby ceased to have any interest or rights under the deed. In view of this, the court further decreed "that the apparent relation of trustee and cestui que trust, growing out of said deed, be, and the same is hereby, declared at an end, and complainant denuded and discharged of any such apparent trust." If that decree settled anything, it was that Mrs. Reynolds and her children were not tenants in common under the Ruohs deed. Whatever their rights, they were not legal rights, and their estate not a legal estate. After that decree, it was no longer essential that Mrs. Reynolds should join her husband in a conveyance, or that his conveyance should be upon her request. It was, in substance, a case where a father bought property, and took a deed to himself for the use and benefit of his wife and children, the sole object being to

provide a family home. If the conveyance had been to Mrs. Reynolds, with the same purposes declared in favor of her children, the children would, under the well-settled law of Tennessee, have acquired no legal interest. The case of Moore v. Simmons, 2 Head, 545, is in point. That was a case of a deed by a father of property to a trustee for the use and benefit of several daughters of the grantor. With regard to one of them (Mrs. Simmons), the conveyance recited that the trustee was to hold the property "for the sole and proper use of Sally Simmons and her children, * * * not to be subject to the control or debts of any other person, either her husband or otherwise; the same being intended to be held in trust by said trustees for the use and benefit of the children of the said Simpson Shaw [grantor and father of Sally Simmons] and their heirs." A creditor of one of the children of Sally Simmons sought to subject the supposed interest of such child to the payment of his debt, claiming that the mother and children were tenants in common, in reality. The court said:

"We think this construction, though plausible, cannot be maintained. Taking the whole instrument together, and in view of the considerations by which it was prompted, we entertain no doubt but that the intention was to give the entire estate to the daughter, to her separate use, by which she would be enabled to support herself and children, as a family. If that were not so, but a joint interest was vested in the children, the object intended could be defeated by any creditor of the children, as is now attempted. If he intended to give the property to the latter, would he not have protected it in them, as he did that of their mother against creditors? Surely, the same reason existed for doing so. Another absurd consequence, subversive of the apparent intention, would result from that construction: If any interest passed to the children, it must be a present one, and, as such, might be demanded by a guardian, or by any child on coming of age, or marrying, with an account, perhaps, and thus defeat the prominent object, of keeping all together for the support of the family, as a unit."

In the case under consideration there was no direct conveyance of the title to the wife and children, nor, under the construction put on the deed in Moore v. Simmons, was the legal title charged with a trust in their favor, in such way as to vest any interest in the corpus, either in praesenti or in remainder. It fell directly under cases of the class in which the legal title vests in the grantee subject to a participation by the wife and children in the use and enjoyment of the premises as a home, while members of the family, in the grantee's lifetime. Allen v. Westbrook, 16 Lea, 255, and Bunch v. Hardy, 3 Lea, 549, are cases of trusts of like character, in which a like construction was reached. Reading the decree of 1872 in the light of these Tennessee cases, it is plain that the chancellor was of opinion that the legal title was in John F. Reynolds, subject to a participation by wife and children in the enjoyment of the property as a family home so long as he should live, and so long as they continued to be members of the family. In this view, the beneficial interest of the wife ceased when she became forisfamiliated; and the interest of the children ceased when they departed from under the parental roof, and, in any event, upon the death of the grantee, in whom was the legal title. Whether that decree was erroneous in the matter of the construction placed upon the Ruohs

deed is now a matter of no practical interest. The decree stands unreversed, and is conclusive upon complainants, they having been parties to the cause. Subsequent to that decree, suits were brought, charging the property, under mechanics' liens for improvements put thereon by John F. Reynolds. Under decree obtained, the property was exposed to sale, and bid in by one J. C. Woodruff, for the benefit of John F. Reynolds. To meet these claims, Reynolds sold the property to William Hewitt, under whom defendants claim. Reynolds made to Hewitt a bond conditioned to make deed by a day named. Thereafter, Reynolds, under legal advice, sought to have this sale by him confirmed by the state chancery court. For this purpose he filed his original bill, in which he set out the facts as to the first suit, in which the deed to himself from Ruohs had been construed, and the subsequent facts, as above detailed. The bill then recited that: "It may be, and he is advised that he could, under said decree, and facts surrounding the case, sell said property, and pass a good title. * * * But that he is further advised that it is more safe and proper to report his said sale, * * * and have the same sanctioned and approved, * * * and direction given touching the proceeds of sale, as right and justice may require."

To that bill the purchaser, William Hewitt, was made a party defendant by actual service of process. The complainants in the present suit were also made parties defendant by publication, they being then nonresidents of the state, and minors. The regularity and validity of this publication is the principal matter of contention presented by the present bill, and has been the occasion of able and elaborate argument upon each side. A guardian ad litem was appointed, who answered and defended for the minors thus made defendants. Proof was taken. Upon final hearing the court ratified and confirmed the sale made to Hewitt, and divested all title and interest out of the complainant, John F. Reynolds, and out of the defendants, the children of his former wife, Elizabeth J. J. Reynolds, (they being the complainants in the present case), and vested title in the purchaser, "William Hewitt, his heirs and assigns, forever." Hewitt took possession in 1874, and has since sold and conveyed to the defendants now before the court. That two of the complainants are barred by the Tennessee statute of limitation of seven years is not seriously disputed. Complainant Francis T. Reynolds is now 32 years of age, and complainant Rowena is 29. Section 3461, Code Tenn (Mill & V. Ed.), bars all rights of action for the recovery of any interest in real estate, legal or equitable, unless suit shall be brought within seven years after adverse possession. By section 3451 the rights of minors are saved, by extending to them a right of action for three years after removal of such disability. This suit has not been brought within the time allowed for persons laboring under the disability of nonage at time adverse possession begun. Complainant Alma was only 23 when this bill was filed. She is, consequently, not barred. If it be assumed that the right of complainant Alma to participate, after the decree of 1872, in the use and enjoyment of this home, so long as she continued a member of the family, existed, yet that right was lost by the sale and convey-

ance of the property to meet liabilities charged upon it in improvements. If her father had made a sale for the purpose of paying off these liabilities, or to make a reinvestment, his deed would have carried a perfect fee, discharged from, and unaffected by, any trust in her behalf. If we treat the decree of 1874 as void and inoperative, as to her, for defective publication, or any other cause, still it would stand as a valid decree, as between John F. Reynolds and William Hewitt. The latter was regularly a party defendant. He was not an indispensable party, but he was a proper party, in view of his purchase from Reynolds, and the assignment to him of Woodruff's bid. The decree, as between them, operated to divest title out of John F. Reynolds, and to vest it in William Hewitt. He was not, in equity, charged with any duty as to the reinvestment of the surplus of purchase money after paying off the lien debts. The remedy as to this surplus, if any they have, is against their father, and not against the property, upon which no lien rests after payment of the purchase money. The result is that it is unnecessary to consider the many interesting questions which were discussed, involving the validity of the decree confirming the sale to Hewitt. The decree of the circuit court must, upon the grounds we have stated, be affirmed.