## PARKER PEN CO. v. FINSTONE.

(District Court, S. D. New York. July 24, 1925.)

1. **Trade-marks and trade-names and unfair competition 17—Trade-mark for fountain pen, consisting of red body portion and two black ends, held invalid.**

Trade-mark for fountain pen, consisting of red body portion and two black ends, alone or in combination with pen of particular size, *held* invalid, as not a proper subject for monopoly.

2. **Trade-marks and trade-names and unfair competition 1—Law of trade-marks is part of law of unfair competition.**

The law of trade-marks is but a part of the broader law of unfair competition.

3. **Trade-marks and trade-names and unfair competition 26—Mere adoption of trade-mark does not establish its validity.**

The mere adoption of a trade-mark does not establish its validity, but right must grow out of its use.

4. **Trade-marks and trade-names and unfair competition 21—Mark common to trade cannot become valid trade-mark.**

A mark which is common to the trade when it is sought to adopt it as a trade-mark cannot become a valid trade-mark.

5. **Trade-marks and trade-names and unfair competition 21—Priority is fundamental to operation of exclusive appropriation.**

Priority in use of a trade-mark is fundamental on question of exclusive appropriation.

7 F.(2d)—48

**6. Trade-marks and trade-names and unfair competition ⊛67—Where color and size of fountain pens common to trade, purchaser bound to examine name on label or other markings.**

Where color combinations and size of fountain pens were matters common to the trade, purchaser was chargeable with such knowledge, and was bound to examine name on label or other markings.

**7. Trade-marks and trade-names and unfair competition ⊛70(1)—Mere size of fountain pens, with color combinations, held not to entitle plaintiff to protection.**

As size of fountain pens was matter of utility and function, and was in common use, it, with color combinations, did not entitle plaintiff to protection as against unfair competition.

**8. Trade-marks and trade-names and unfair competition ⊛76—Circumstances held not to justify relief to defendant for letters written to trade by plaintiff.**

In suit for infringement of trade-mark for fountain pens, circumstances *held* not to justify relief to defendant for letters written by plaintiff to trade, asserting its supposed rights, where plaintiff acted in good faith, and evidence showed no damage to defendant.

In Equity. Action by the Parker Pen Company against Marx Finstone, doing business under the name and style of the Eclipse Pen Company. Decree for defendant.

Dodson & Roe, of New York City (Harry Lea Dodson and Zell G. Roe, both of New York City, of counsel), for plaintiff.

Harry D. Nims, of New York City (Minturn De S. Verdi, of New York City of counsel), for defendant.

WINSLOW, District Judge. This is an action in equity to restrain infringement of plaintiff's trade-mark by the defendant. The plaintiff also contends that the defendant has been guilty of unfair competition.

[1] The trade-mark of the plaintiff was registered in the United States Patent Office January 16, 1923, No. 163,481, on application filed May 23, 1922. It covers a drawing of a fountain pen, the statement being to the effect that the fountain pen has "a red body portion and two black end portions (no claim being made for the exclusive use of the representation of the fountain pen apart from the mark as shown in the drawing), for fountain pens." The statement further is to the effect that: "The trade-mark has been continuously used in the business of said corporation since August 25, 1921. The trade-mark is applied to the goods by producing the same directly upon the pen body."

It is in evidence that the defendant has manufactured and sold pens which bear a striking resemblance to the plaintiff's pens, both having a red barrel with a black tip on each end. The plaintiff's clip, however, is attached differently from that of the defendant, and the pens are further distinguishable by reason of the fact that plaintiff's name appears on its pen, and the defendant's designation appears on defendant's pen. There is some evidence in the record of possible confusion in the mind of a purchaser as to the two pens, or possible confusion between the plaintiff's pens and other pens; but I do not think the evidence sufficient to warrant the conclusion that this confusion has been brought home to this defendant by his unlawful imitation. The evidence, in substance, is merely to the effect that pens other than the defendant's, and possibly defendant's, have been confused with the plaintiff's.

There is abundant evidence, however, before the court, that many manufacturers have used the color combination of red and black in the manufacture of fountain pens prior to the use by the plaintiff. But there is also a contention on the part of the plaintiff that the sizes of defendant's pens approximate those of the plaintiff, thus bringing in the suggested element of unfair competition in the combination of dress and size. It may be noted, however, that the plaintiff's pleadings make no mention of the question of size. It is in evidence that the plaintiff sells pens in numerous color combinations, other than the ones set forth in the trade-mark, and in varying sizes. Defendant has sold pens since 1907. The Parker pen, for which the distinctive trade-mark and dress are claimed, has been made and sold for upwards of four years. The defendant made red and black pens prior to 1916.

On the trial of this case the court stated to counsel, after considerable evidence had been received, that the court was then of the opinion that the evidence established conclusively that the use of red and black in the manufacture of fountain pens is not the subject of monopoly on the part of this plaintiff, or of any other plaintiff, that such use of color combination was conventional, and that these things have been in use for many years. After mature consideration of the entire record, the court sees no reason to come to a different conclusion. It is unnecessary here to review the volume of evidence as to the use, prior to the registration of plaintiff's trade-mark, of these color combinations in fountain pens; but the court

again reiterates that it is of the opinion that plaintiff is not entitled to a monopoly in the use of red and black fountain pen barrels in the manner evidenced by the exhibits. In like manner, the combination of these colors with a particular size, which size is by no means unusual with many manufacturers, is not now susceptible of monopoly by this plaintiff, or any other plaintiff. It follows, therefore, that the registered trade-mark, in and of itself, is invalid.

[2] It is, however, necessary to consider whether other elements enter into the case, which would justify the conclusion that the defendant has been guilty of unfair competition. The law of trade-marks, as has been stated many times, is but a part of the broader law of unfair competition. United Drug Co. v. Rectanus, 248 U. S. 90, 39 S. Ct. 48, 63 L. Ed. 141.

[3-5] The mere adoption of a trade-mark does not establish its validity; but the right to a trade-mark must grow out of its use. In other words, in proceeding to the broader field of unfair competition, inquiry must be had as to priority. If a given mark is common to the trade when it is sought to adopt it as a trade-mark, it is obvious that it can never become a valid trade-mark. If a given mark has been common to a particular trade, it is manifest that by its adoption one cannot claim priority, which is fundamental on the question of exclusive appropriation.

[6] If the defendant had adopted the color combination and size of plaintiff's pen, or approximated these elements, and had also adopted plaintiff's name or trade designation in connection therewith, it is elemental that defendant would be restrained from such flagrant violation of plaintiff's rights. In the present instance, a casual purchaser might be confused by the similarity in appearance of plaintiff's and defendant's pens, when placed on display; but if the plaintiff has manufactured, as it would appear, a meritorious article, its name, "Parker," distinguishes it, and protects the public against deception. Certainly, if the court be correct in its conclusion, from the facts in this case, that the color combinations objected to and the mere size of defendant's pen are matters that are common to the trade, then the purchaser himself is chargeable with such knowledge, and is bound to examine the name on the label, or other markings, with sufficient care to ascertain the name of the manufacturer whose meritorious product he desires. Coats v. Merrick Thread Co., 149 U. S. 562, 13 S. Ct. 966, 37 L. Ed. 847;

Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 S. Ct. 151, 37 L. Ed. 1144.

The things which really distinguish the plaintiff's pen from other pens are the words "Parker" and "Duofold," to which the plaintiff has the right to exclusive use in this connection. The cases cited by the learned counsel for the plaintiff have to do with features which identify the claimant's product and stamp him as the originator in the minds of the purchasing public.

[7] The plaintiff, however, in his contention that the defendant has been guilty of unfair competition, contends that the entire dress of the defendant's pen is such as to entitle him to relief, and the plaintiff's testimony sets forth the distinguishing characteristics, particularly as the supposed unusual combination in the pen of color, size, and quality, and that the new Parker pen, in its distinctive dress of coral red barrel with black tip, marks it for protection. Certainly the color alone, in view of the court's findings, does not distinguish the pen. Size is a matter of utility and function, and the size, when used with the color combination, the size itself being in common use, does not entitle the plaintiff to protection. These various elements, few in number, serve purposes of utility, convenience, and attraction merely, and are not by any means distinguishing features. Viavi Co. v. Vimedia Co., 245 F. 289, 157 C. C. A. 481.

It is conceivable that a variety of elements, all separately common to a given trade, might be combined in a dress hitherto unknown, and thus entitle the originator to protection. That is not the case here. It is interesting to note that plaintiff's advertising, as appears by its illustrated folder, shows various sizes of red and black pens. The advertisements offered on the part of defendant show similar sizes. Evidence is produced showing that the plaintiff from time to time has advertised a pen with a gold band, narrow in one instance and wider in another, and that the defendant has used similar bands. But these things again do not strengthen plaintiff's case.

As was well said in National Picture Theatres v. Foundation Film Corporation (C. C. A.) 266 F. 208, by Judge Hough, speaking for the court, at pages 210 and 211: "Where unfair competition is charged, 'the rights of the parties are to be determined by principles similar to those which are well known to govern trade-marks, although the combination of elements is more complex than any devices which commonly go by that

name.' * * * To expand this thought plaintiff must have a right in being, an actual property right, to protect." It is quite evident that the property right to which the court then referred cannot exist in elements separately and in combination, common to the trade. Priority of use is all-important in order to sustain such property right.

[8] Turning now to the defendant's counterclaim, in which he alleges that he has suffered damage by reason of letters written by plaintiff to his customers, the evidence is quite inconclusive that any damage was suffered by reason of letters sent to various dealers, in which plaintiff has asserted his supposed rights in the premises. On the contrary, the court is of the opinion that the plaintiff, believing his claims to be valid, has sought to maintain them, and has instituted suits to restrain alleged infringement. It does not appear that there is an absence of good faith on the part of the plaintiff, or that any letters or statements sent to the trade were intentionally false or malicious, or that they were sent for the purpose of destroying the business of defendant. The facts lead to the conclusion that the plaintiff acted in good faith and within its supposed rights. Clip Bar. Mfg. Co. v. Steel Protected Concrete Co. (D. C.) 209 F. 874, 875.

· I do not believe that the circumstances justify the relief demanded in the defendant's counterclaim. Decree will be for the defendant on the bill of complaint. The counterclaim will be dismissed.

Decree to be settled on notice.