## MAYTAG CO. v. MEADOWS MFG. CO.

Circuit Court of Appeals, Seventh Circuit.
October 29, 1929.

Rehearing Denied November 27, 1929.

Nos. 3999, 4170.

404

Wallace R. Lane and Ralph M. Snyder, both of Chicago, Ill., William L. Patton, of Springfield, Ill., and Henry Russell Platt, of Chicago, Ill., for appellant.

Hal M. Stone, of Bloomington, Ill. (Chalmer C. Taylor, of Bloomington, Ill., on the brief), for appellee.

Before EVANS and PAGE, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge. These two appeals grow out of the same subject-matter, and were presented together in this court. For convenience' sake they are disposed of in one opinion.

In No. 4170 appellant on November 11, 1926, filed its bill of complaint for injunction and damages in the District Court for the Southern District of Illinois charging that the appellee has copied both the essential and nonessential features of its unpatented combined Maytag electric power washing and wringing machine, so that purchasing parties do not distinguish appellee's machine from that of appellant; that appellee has palmed off its machine as that of appellant, wrongfully appropriated the latter's advertising, and wrongfully interfered with its dealers and salesmen. Appellee answered, denying the wrongs complained of, set forth in its answer allegations of unfair competition upon the part of appellant, and prayed an injunction against appellant as affirmative relief. The District Court found the issues for the appellee upon both the bill and the counterclaim.

Both companies have been in business for more than 25 years, manufacturing articles other than washing machines and beginning to make power washing machines about 18 years ago. As the years passed, various improvements were made in the machines of each of the parties. About 1917 appellant and appellee, with certain other companies, in settlement of their disputes as to wringer patents, entered into an agreement whereby the patents were thereafter jointly owned and royalties thereon paid to one of the officials of the appellee as trustee for the interested parties. Appellee has for many years placed upon its product a distinctive registered trade-mark consisting of the word "Meadows" with a scroll underneath, and appellant has placed upon its product a trade-name "Maytag" with a scroll underneath. Appellant began to produce its present washer in 1922. The design proved to be of utilitarian value, and the manufacture and sale of the machine have rapidly grown. In 1925 appellee designed, and early the following year began the manufacture and sale of, the washer complained of.

Each of the machines consists of a rectangularly shaped tub, sitting upon four legs, one of which is the power leg, through which power is transmitted from the motor through the gearing placed on framework below the tub, to the wringer, which is hung upon the power leg above the tub, and the gyratator or agitator placed within the tub for the purpose of washing. The essential features of the combination include the wringer, tub, motor, gearing, transmission of power from the gearing to the wringer, and gyratator, the four legs of the tub, an outlet for the water, and a top substantially water tight.

In the unpatented combination appellant has no monopoly and to reproductions thereof no complaint, unless in copying the same appellee has reproduced, not only the essential, but also the nonessential, features of the machine to the extent that the ordinary purchaser is confused and deceived by the result to the extent that he mistakes appellee's machines for appellant's. Pope Automatic, etc., Co. v. McCrum-Howell Co. (C. C. A.) 191 F. 979. There the court held that a manufacturer of an unpatented mechanical device, who has selected the most suitable material, and has adopted the most simple, efficient, and economical form of construction in which the combination can probably be embodied, with nothing for embellishment or distinction except a name plate, cannot charge a competitor with unfair competition, because for the same utilitarian reasons he uses the same construction in all respects except as to the name plate, which he makes distinctive.

In Marvel Co. v. Pearl (C. C. A.) 133 F. 160, 161, the court said:

"In the absence of protection by patent, no person can monopolize or appropriate to the exclusion of others elements of mechanical construction which are essential to the successful practical operation of a manufacture, or which primarily serve to promote its efficiency for the purpose to which it is

devoted. Unfair competition is not established by proof of similarity in form, dimensions, or general appearance alone."

The differences between the two machines are easily discernible. Appellee's machine has placed prominently upon the side of the tub a shield as long as the word "Meadows" and almost as wide as the same, and across the shield the registered trade-mark "Meadows." Appellant's tub is similarly prominently marked with the trade-name "Maytag" without any shield. Appellee's tub has a flat bottom, except where the bottom joins the sides, where it is slightly rounded. Appellant's tub has a hopper shaped bottom, the lower extremity of which is saucer shaped. Into this fits appellant's aluminum saucer shaped gyratator, bearing four fins. On the flat bottom of appellee's tub fits the approximately flat bottom "agitator" of appellee, on which are six fins. This agitator is of bakelite, a nonmetallic substance. Upon its gyratator and the complementary bottom of its tub appellant has a patent. Appellant's tub has an outlet of rubber hose, rather noticeable because of its prominence, as it is looped up over the edge of the tub from the bottom. Appellee's tub has a short metallic outlet at the bottom of the tub. The fins of appellant's gyratator curve upward at the outer edge; those of appellee's agitator curve downward. Appellee claims advantage in this fact because of the absence of upward protrusions upon the fins which might engage the clothes and injure the same. Appellee's agitator is black; that of appellant is bright aluminum. Appellant's gear case contains one gear wheel driven by a cast-iron worm, and from the gear wheel one shaft operates both the gyratator and the wringer. Appellee's gearing consists of a worm and three gear wheels with two shafts, one to operate the wringer and one the agitator. The gear cases are different in appearance. The power leg of appellant's machine is so much smaller than that of appellee that the difference is obvious to the most casual observer. In appellant's machine the wringer gear fits down over the power shaft, while in appellee's the wringer gear fits down within the power leg. The two wringers are unlike in appearance, that of appellant bearing upon its top the name "Maytag," that of appellee the registered trade-mark "Meadows," and their methods of release of tension differ widely. The difference in appearance of the tops of the wringers is marked. The general appearance of the two machines is far from identical. Upon appellant's machine the power leg is placed upon the left-hand side; upon appellee's machine upon the right-hand side. The motor of appellant's machine is placed upon a support running horizontally across the framework between the legs; that of appellee upon a support running diagonally across the framework. Appellant's tub is of aluminum and appellee's of pressed steel. At the top of the tub of each of the parties is an aluminum rim; that of appellant is much the greater width. The lid of appellant's machine bears a coat of arms. Between it and appellee's shield placed upon the side of appellee's machine and upon the top of the tub the court can see no ground for confusion. It is apparent, therefore, that even as to essential features appellee has not strictly copied appellant's machine. It has varied the shape and appearance of the tub, wringer, power leg, gear box, and the vent, and placed a distinctive registered trade-mark upon the side and top of its machine.

Both machines are painted the same color, a light gray, and both the tubs are rectangular in shape, although their bottoms are different. The question arises, therefore, as to whether appellee committed a wrong in adopting the rectangular shape of the tub and the same color of paint.

Experience in the art has demonstrated that the particular shape of both appellant's and appellee's tub is the most utilitarian and efficient yet devised. Without discussing the evidence in this respect in detail, the conclusion is well justified that a rectangularly shaped tub is most desirable. To change the appearance of the tub appellant might add superfluous and unsightly material at the expense of additional cost and desirability of product. To have placed upon appellee's tub a round cover and opening would have interfered with the appearance of the tub and likewise with the efficient co-operation of the wringer. As this court has said:

"Development in a useful art is ordinarily toward effectiveness of operation and simplicity of form. Carriages, bicycles, automobiles, and many other things from diversity have approached uniformity through the utilitarian impulse. If one manufacturer should make an advance in effectiveness of operation, or in simplicity of form, or in utility of color; and if that advance did not entitle him to a monopoly by means of a machine or a process or a product or a design patent; and if by means of unfair trade suits he could shut out other manufacturers who plainly intended to share in the benefits

of the unpatented utilities and in the trade that had been built up thereon, but who used on their products conspicuous name-plates, containing unmistakably distinct trade-names, trade-marks, and names and addresses of makers, and in relation to whose products no instance of deception had occurred —he would be given gratuitously a monopoly more effective ·than that of the unobtainable patent in the ratio of eternity to 17 years." Pope Automatic Merchandising Co. v. Mc-Crum-Howell Co., 191 F. 979, 981.

Appellee began to use gray paint upon all of its machines in 1922, four years before it made its present machine. Other manufacturers likewise use gray paint to the extent that it has become standardized and known as "washing machine gray." The evidence is that colors with heavy pigments will not adhere to the udylite, with which appellee coats its pressed steel tub to prevent rusting. In this situation, the color having been standardized, there can be no complaint made of its use. Abbott Coin Counter Co. v. Standard-Johnson Co. (D. C.) 290 F. 419; Parker Pen Co. v. Finstone Co. (D. C.) 7 F. (2d) 753.

We agree with the District Court that there has been no wrongful ˙act upon the part of the appellee in copying or duplicating the product of appellant's unpatented combination.

■ We proceed to examine the question of whether the appellee has attempted to palm off its machine as that of appellant. The evidence upon both sides is voluminous. It appears, first, that the sales organizations of the two companies proceed differently and are built up upon different bases. Appellant sells its product by direct contact from the factory to the consumer through branch managers, district managers, ·and divisional managers, whose duty it is to train the dealers and salesmen. In the entire organization of appellant in the United States there are some 8,000 people. Appellee's organization consists of some traveling representatives, who come in touch with distributors, but not with customers. To these distributors appellee delivers in carload lots. After such delivery, appellee has no direct contact with the ultimate consumer. Both machines are sold by demonstration in competition. Consequently the customer observes and hears all that the salesmen of the different companies have to offer, and sees the product of the different companies demonstrated. Many probable purchasers testified, some of them as witnesses for appellant, but more of them for appellee, that they recognized the difference in the two machines without any difficulty. Some witnesses who testified in support of appellant were people of foreign birth, who did not speak English well, and who apparently did not thoroughly understand. That there was any actual confusion in the minds of even these people is very doubtful to the court in view of all of their testimony. There is some evidence that salesmen selling appellee's product said that appellee's machine was an improvement over the Maytag washer. Appellee now contends this was mere sales talk. There is some evidence that in one instance the salesman referred to the machine as an improved Maytag, but this˙is strenuously denied. The recited instances of alleged confusion and deception, when analyzed, do not bear out appellant's allegations of confusion or deception of ordinary persons. Thum Co. v. Dickinson (C. C. A.) 245 F. 613; Lorillard Co. v. Peper (C. C. A.) 86 F. 960; Armour & Co. v. Louisville, etc. Co. (D. C.) 275 F. 92. The District Court was warranted in finding that appellant had not sustained the burden of proof required of it in this respect.

■ Complaint is made of the advertising of appellee. We have examined all of the evidence in this respect, and are of the opinion that the advertising of the appellee's product shows no copying of appellant's, no adoption of its previous advertising, and only such similarity as is usual in the advertising of competitive products. The word "multimotor" used by appellant in describing its gasoline power washer was used by one of the distributors of appellee's machine in his advertising. He testified that he alone was responsible for the use of the word, that the Meadows Company instructed him not to continue its use, and that it was immediately dropped. One local dealer, in one of his local advertisements of the appellee's machine, adopted the slogan "if it does not sell itself do not keep it" previously used by appellant. This was not done with the authority of appellee. The isolated advertisements complained of are not sufficient to show any wrongful action upon the part of appellee in advertising, nor is there any evidence that any person was deceived by any of the advertising of appellee.

■ After the evidence had been completed, appellant sought to make an amendment to its bill of complaint, wherein it alleged that appellee had failed to mark its machine with the list of patents pooled in the trust agreement hereinbefore mentioned, as required by said agreement. These patents covered the swinging wringer and gear mechanism. Ap-

pellant places the same upon the tub. Apparently there arose in the minds of the officers of appellee some question as to the proper place for the listing, and, there not being sufficient space for the same upon the gearing and wringer, it was omitted, but, before any complaint of that fact was made, appellee directed the listing to be put upon the tub. The District Court was justified in declining the amendment after the completion of the evidence, for the reason that it came too late and that the issues raised did not affect in any manner the merits of the issue between the parties.

We find no error in the court's finding and conclusion upon the original bill of complaint.

Appellee presented its prayer for affirmative relief in its answer to the bill of complaint, and averred therein that beginning with the summer of 1926 appellant has caused to be circulated throughout the country defamatory propaganda relating to appellee and its product, which is false, and known by appellant to be false, that the diffusion of such propaganda has been so extensive that it has become increasingly difficult for appellee's dealers to sell its washer, and that as a result thereof many sales were lost.

As we have pointed out, the sales organization of appellant includes some 8,000 persons linked together in appellant's efficient system of sales organization by means of the branch, district, and divisional managers. All the salesmen were subject to the control and policy of the company through the various managers under whom they worked, and devoted their time exclusively to the promotion and sales of Maytag machines by calling upon thousands of prospective customers and dealers each day. The amounts received as compensation usually depended upon the commissions and bonuses paid by appellant which in turn depended upon the number of machines sold.

Prior to the manufacture of appellee's present machine, and thereafter until suit was begun, appellant's representatives, sales representatives, district and divisional managers, and other individuals of the Maytag sales organization in meetings, house organs, questionnaires, and letters, made statements that the wringer of appellee's machine was made under fundamental patents controlled by the Maytag Company, upon which appellee paid a royalty. The truth, as heretofore stated, is that the wringer patents owned by the various patentees have been pooled, that both appellee and appellant are sharing in the royalties, and that an officer of appellee is trustee under the agreement. When salesmen were instructed that the Maytag Company owned the patent on the swinging wringer, and that it obtained a royalty on all swinging wringers used, it is apparent erroneous information was grounded in the minds of the sales organization. These facts of themselves are of importance, only as tending to show the general erroneous information lodged in the minds of the members of the organization in various parts of the country, thus preparing fertile ground for growth of further erroneous understanding.

In July of 1926, after appellee began to make the machine complained of, at a convention of Maytag representatives, the Minneapolis branch manager stated that appellant was about to sue appellee for infringement of patents, and that there was no question but that there was a patent infringement. Similar statements were made to dealers in the summer and fall of 1926 visiting the Maytag factory. In October, 1926, a divisional manager in Nebraska made the same statement, saying that appellee would not be in business very long. This information spread to the salesmen and dealers in that territory, in the Minneapolis territory, and in Wisconsin in the late fall and winter of 1926, and was used as a sales argument by salesmen. A letter was sent out from the factory of appellant, and rightfully or wrongfully quoted to the same effect by representatives of the company in making sales. This letter was never produced by appellant. The record is barren of any evidence that the litigation instituted by appellant was ever truthfully explained to the trade by it. Customers in Indiana, Colorado, Pennsylvania, and Michigan were told, before suit was begun, that appellee's machine was no good; that it was in court; that appellee was going to be in trouble; that it was being sued for infringement of patents; that it would soon be out of business; that customers would not be able to get parts or repairs; that appellee had copied the Maytag patent in making its machine, and that there were twenty-six suits pending against appellee's product.

After the suit was filed, appellant's representatives throughout the country told customers that appellee was paying a royalty to the Maytag Company upon its patent; that it had copied, imitated, and infringed the Maytag patents; that there was an injunction against appellee; that soon it would not be making washers; that customers could not get parts or repairs and would

not be able to use appellee's machine; that customers would have orphans on their hands, meaning appellee's machines; that the financial backing of the Meadows Company was weak; that its salesmen were here to-day and gone to-morrow; that appellee was a new and inexperienced company; that it had a small factory; that it did not have a factory; that it owed notes which were past due and that it could not pay; that it was in the hands of a receiver; that it had no credit rating; that the letterheads were a big bluff; that the guaranty was not worth the paper it was written on; that the factory had already been closed; that there was a suit pending for infringement of patents; that appellee's tub was made of tin; that hot or cold water would crack the tub and the agitator; that the machine was a bunch of junk; that the wringer rollers were no good; that steam leaked out around the lid; that the tub would not hold heat; that appellee had been sued for a sum of money ranging from $500 to $150,000,000. These and similar statements were made by appellant's representatives in many places in Ohio, California, Pennsylvania, Indiana, Missouri, Kansas, South Dakota, North Dakota, Colorado, Minnesota, and Michigan.

As a result of this situation, prospective customers hesitated or refused to purchase appellee's machines. They became frightened, and demanded security that appellee's machine, if purchased, would not be taken from them. They feared they might be involved in litigation and might not be able to procure parts. Dealers became uneasy and ceased handling appellee's machine because of the fear engendered in their minds; prospective customers were frightened and lost; complaints from dealers and distributors came to the office of appellee. Appellee was put to great expense in counteracting this propaganda and in reassuring dealers and customers of the exact status of the litigation and of the relationship between appellant and appellee.

█ It is contended that the resulting injury was one for which the appellee had an adequate remedy at law. A plaintiff is not compelled to submit its rights in such case to the restrictions of a court of law. Equity has jurisdiction of a suit to enjoin substantial and continuing financial injury to a manufacturing business caused by circulating false statements that the product is an infringement of patents and threatening suit for infringement in bad faith for the purpose of injuring his trade and without intention to sue. Dittgen v. Racine Paper Co. (C. C.) 164 F. 85 and (C. C. A.) 171 F. 631. As a general rule, a court of equity will not enjoin the publication of a libel in the absence of acts of conspiracy (Hicks Corporation v. National Sales Ass'n (C. C. A.) 19 F.(2d) 963), but where there is wide-spread propaganda, indicating a well-founded plan, skillfully disseminated throughout the land to intimidate customers and coerce them, to frighten dealers so as to cause them to cease representing another, equity will, because of such intimidation, coercion, and conspiracy, take jurisdiction and afford adequate and full relief (Farquhar v. National Harrow Co. (C. C. A.) 102 F. 714, 49 L. R. A. 755; Adriance, Platt & Co. v. National Harrow Co. (C. C. A.) 121 F. 827; Emack v. Kane (C. C.) 34 F. 46), upon the principle that equity can give more adequate and complete relief than can be obtained at law (City of Georgetown v. Alexandria Canal Co., 12 Pet. 91, 9 L. Ed. 1012; In re Debs, 158 U. S. 587, 15 S. Ct. 900, 39 L. Ed. 1092). The Circuit Court of Appeals for the Sixth Circuit in Toledo Computing Scale Co. v. Computing Scale Co., 142 F. 919, held that an injunction should issue against the publication and dissemination of circulars charging that a certain scale was a false and dishonest scale made and sold for the purpose of enabling the user to deceive the public, etc., saying:

"It is further contended that this suit being a suit in equity, ought not to be entertained, because there exists an adequate remedy in an action at law for the recovery of damages. We greatly doubt whether the legal remedy would be adequate. It would be difficult to estimate the damages arising from the destruction or serious impairment of one's business, and the better, more efficient and certain remedy would be an injunction restraining the defendant from perpetrating the wrong. Besides the injury complained of is a continuing injury and would involve the necessity for a multitude of suits. But if this objection were maintainable it should have been taken in limine, before answering to the merits. 1 Dan. Ch. Pl. & Pr. (4th Ed.) 550, note; Reynes v. Dumont, 130 U. S. 354, 395, 9 S. Ct. 486, 32 L. Ed. 934; Kilbourn v. Sunderland, 130 U. S. 505, 9 S. Ct. 594, 32 L. Ed. 1005; Brown v. Lake Superior Iron Co., 134 U. S. 530, 10 S. Ct. 604, 33 L. Ed. 1021; Perego v. Dodge, 163 U. S. 160, 16 S. Ct. 971, 41 L. Ed. 113; Reynolds v. Watkins, 60 F. 824, 9 C. C. A. 273; McConnel v. Prov. Sav. Life Assur. Soc., 69 F. 115, 16 C. C. A. 172; Elder v. McClaskey, 70 F. 529, 554, 555, 17 C. C. A. 251."

██ Furthermore, the contention that equi-

ty has no jurisdiction of appellee's counterclaim is first made in this court, and therefore comes too late. The objection that there is an adequate remedy at law must be raised by motion to dismiss or by answer. To fail to present such defense until after answer to and trial upon the merits, and to present it in the appellate court alone, constitutes an effective waiver, where the facts, as here, are proper and suitable to be disposed of by a court of equity. Brown B. & Co. v. Lake Superior Iron Co., 134 U. S. 530, 10 S. Ct. 604, 33 L. Ed. 1021; Toledo Computing Scale Co. v. Computing Scale Co. (C. C. A.) 142 F. 922; Tyler v. Savage, 143 U. S. 79, 12 S. Ct. 340, 36 L. Ed. 82.

Furthermore, in view of the fact that the point was not raised in the court below, and that there is no assignment of error made with respect to it in the record, the contention is not presented to this court. Under rule 23 of this court errors not assigned according to the rule should be disregarded. Edward Hines Yellow Pine Trustees v. Martin, 268 U. S. 458, 45 S. Ct. 543, 69 L. Ed. 1050.

It follows that the acts of appellant complained of in appellee's counterclaim are amply proved, that the court's findings in that respect are supported by the evidence, and that there is no substantial error in the record. Accordingly the decree of the lower court is affirmed at the costs of the appellant. [9] The appeal in case 3999 arose out of certain proceedings in and during the pendency of the trial in cause No. 4170. Appellant filed in the United States District Court for the Western District of Missouri against Howard Finn and the Electrical Equipment Company, parties engaged in the sale and distribution of appellee's machine, a bill for injunction, substantially the same as the bill previously filed in cause No. 4170. It contained in addition only specific charges of misrepresentations and slander. The prayer for relief was the same as that in the District Court in Illinois, except for an additional paragraph wherein appellant sought to enjoin the two parties named from making any false, wrongful, or malicious statements concerning appellant and its product. Appellee thereupon filed in the original suit in Illinois its application to restrain appellant from prosecuting the suit in the Western District of Missouri, and an order was entered restraining appellant from commencing or prosecuting any suits against dealers, distributors, or customers of appellee for damages arising out of the sale of appellee's machine, or any suits seeking to enjoin the sale of appellee's said machine or the proper advertising thereof, or in any wise interfering with the sale of said machine upon the ground alone of its alleged "resemblance or similarity in appearance, or principle to the Maytag Gyrafoam Washer." Thereafter a temporary injunction was entered commanding appellant "not to commence or prosecute any suit of any kind or character against any dealer, distributor or customer of The Meadows Manufacturing Company which tenders as an issue therein the right of The Meadows Manufacturing Company to manufacture, or of such dealer, distributor or customer to purchase, advertise or sell in any lawful manner the product of The Meadows Manufacturing Company known as its Meadows Model H washing machine because of the alleged similarity in appearance between the Meadows Model H washing machine, as heretofore manufactured by The Meadows Manufacturing Company and the washing machines manufactured by The Maytag Company." Obviously the injunction did not forbid any suit for the relief prayed in paragraph E in the bill filed in Missouri; that is, from making any false, wrongful, or malicious statements concerning appellant and its product. Appellant may still prosecute any suit for any malicious slander or libel or for any relief except such as may be identical with that prayed in the original suit filed in the District Court in Illinois. The only question arising upon this appeal is whether the trial court rightfully enjoined appellant from suing the distributors and dealers of appellee's machines for the same relief for which it was then suing appellee in the Illinois court.

Appellee made showing that other suits of similar character would be filed in various jurisdictions; that the natural effect thereof is to interfere with the sale of appellee's products; that appellant is a powerful corporation, with an income of many millions of dollars per year, with agencies and branches throughout the country, and that the purpose of the threatened multiplicitous litigation is to cause the expense thereof to be so great as to destroy appellee and its business; that the suit pending in Illinois is against the manufacturer, involving the right to manufacture and sell the washing machines in question and for damages and profits, and that no other suits in any other jurisdiction are necessary to protect the interests of appellant.

The facts amply support the order ap-

pealed from. The court was justified in restraining the bringing of a multiplicity of suits which might result in irreparable injury to the appellee. Public policy favors the rule that litigation for the purpose of ascertaining and sustaining alleged rights of a patentee or manufacturer should be brought against the alleged wrongful manufacturer, and that suits against the latter's customers for the same relief should be restrained until the original suit shall be determined. Ide v. Ball Engine Co. (C. C.) 31 F. 901; Commercial Acetylene Co. v. Avery Portable Lighting Co., 159 F. 935 (C. C. A. 7) approving the opinion of Judge Quarles in the District Court in 152 F. 642; Kessler v. Eldred, 206 U. S. 285 at page 289, 27 S. Ct. 611, 51 L. Ed. 1065; Berliner Gramophone Co. v. Seaman, 113 F. 750 (C. C. A. 4).

In the cause in the court in Illinois all the issues restrained in pending and threatened suits were presented, and the appellant, having elected its forum for redress of alleged violation of its rights, should not be allowed to cause the same issues to be raised in subsequent suits in other jurisdictions at least until after final determination of the original cause. Marconi Wireless Telegram Co. of America v. Kilbourn & Clark Mfg. Co. (D. C.) 235 F. 719; Stebler v. Riverside Heights Orange Growers' Association (D. C.) 211 F. 985. The cases cited by appellant do not militate against this rule.

Both decrees are affirmed at the cost of appellant.