## ELBERS et al. v. CHICAGO PRINTED STRING CO.

### No. 4292.

Circuit Court of Appeals, Seventh Circuit. March 18, 1930.

As Modified on Denial of Rehearing April 22, 1930.

Casanave Young, of Milwaukee, Wis., for appellants.

Thorley Von Holst, of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge.

Appellee, called plaintiff, at Chicago, and appellants, called defendants, at Milwaukee, each manufactured ribbon-like wrapping twine, wound and sold on a spool, that in use is inserted in a holder. The holder was given to purchasers of the twine.

Plaintiff's charge is that defendants' holder is so like plaintiff's that its use constitutes unfair competition. On a showing by affidavits and exhibits, a temporary injunction was ordered. After changes made in defendants' holder, plaintiff filed a supplemental bill, alleging that the changes were colorable only, and the court granted a second injunction. The legend under plaintiff's exhibits below show what they are:

A salesman for plaintiff made an affidavit, stating conversations with a merchant at Pontiac, Ill., and with one at Canton, Ill., concerning transactions they said they had had with defendants. The Canton merchant also made an affidavit concerning the purchase of twine from defendants, and a Minneapolis merchant made an affidavit concerning a like purchase of twine from an agent of defendants. So far as the facts are related in those

Fig. 1
Plaintiff's Spoolholder
put out in 1925

Fig. 2
Plaintiff's Spoolholder
adopted in February, 1927

Fig. 3
Defendant's Spoolholder
adopted in January, 1929

Fig. 4
Defendant's Spoolholder
adopted since the injunction
of July 25, 1929

Those spools and holders, as well as numerous other spools and holders, are before us, so that we know, first hand, wherein they are similar.

affidavits, we deem them unimportant. Their stated conclusions as to similarity between the spoolholders are not, while we have all of the exhibits before us, very persuasive.

The spoolholder is not like a container that is emptied and discarded, but is a machine into which, by manipulation of certain parts, the loaded spool is inserted and the empty spool removed. The relation of the spool to the holder is discussed, and three of the four exhibits shown on opposite page and most of the physical exhibits before us, show the spool in the holder. The spool and the holder are only used together, and should be considered together.

It is urged that defendants have made their spool so that it just fits plaintiff's holder. The exhibits disclose that plaintiff has made its spool so that it fits defendants' old holder, used several years before plaintiff made its holders, and it also fits other holders that had been on the market for twenty-five years.

It is also urged that defendants painted their holder a crinkled green in imitation of plaintiff's holder. Defendants admit that about fifteen of the alleged offending holders were so painted, but plaintiff put in evidence a crinkled green holder, used by defendants long before plaintiff so painted its holder. Although defendants still use the crinkled form of painting, it is of yellow, or red, on a blue base, and does not resemble plaintiff's holder.

Besides the painting of the holder, there are several prominent features that strongly appeal to the eye.

First is the base. We do not see how one, being familiar with figures 1 and 2 above, could mistake either figures 3 or 4 for either of them. Figure 1 has a long straight front, and figure 2 has the corners cut out, so that what otherwise would be an oblong, with a bulging front, is a sort of cross. In defendants' figure 3 the front is irregular, with slight indentations at the corners. In figure 2 all corners and edges are sharp, whereas in figure 3 they are all rounded. Defendants' present form, figure 4, is octagonal, and almost an oval.

In the exhibits, the knife-carrying standard comes up from the back, and the knife-head stands over the center of the spool, much the same in the four exhibits. The conspicuous thing is that the knife head in figure 1 is built up of two nickled plates, held together with bolts. In figure 2, the knife head is a painted, round, cast-iron disk, with a slot in it. In figures 3 and 4, the knife head is an irregular, oblong piece of painted iron, cast as a part of the standard, with a slot that resembles a camel's mouth.

The spool in figure 2 has metal ends, in two colors, covered with printing. The spool in figure 3 is small, with pasteboard ends, without printing. In figure 4, the spool is larger, with pasteboard ends, with no printing, other than that on a small red paper wafer, upon which is defendants' name and other matter. In the ends of defendants' spools are conspicuous wooden plugs.

The mounting fixtures, carrying the spools, are nickled, having two legs that come together at the top and form a journal bearing, in which, in figure 1, are the knob-headed bolts carrying the spool. To insert and remove the spool in figure 1, the bolts are pulled out against coil springs, are locked open by a slight turn of the knob, and, when turned back, are shot into place by the spring. Plaintiff seems to have adopted that appliance from the holder of the United States Printed String Company. It is very old and much in use. Those bolts fit into holes at the core, in each end of the spool. In figure 2, plaintiff uses the two-legged support, but the knob-head bolt is not used. In the journal bearing, on one side only is a short bolt, operated against a coil spring by a lever inserted in the side of the bolt. This lever is pushed back through a horizontal slot, and turned down through a vertical slot to lock it. In the bearing, on the other side, is carried a short bolt, that has on its inside end, next to the spool, a large iron disk, with a milled edge and four pins, extending from its face, that enter holes in the end of the tin spool. That bolt does not move out or in, but rotates under the restriction of the tension device, a vertical threaded bolt between the legs of the support. The vertical bolt is operated through a threaded hole in the bottom of the bearing against the side of the bolt in the bearing. The tension means is not shown in figure 2. On the right-hand side of figures 3 and 4, defendants' holder has the same knob-headed bolt shown in figure 1 and in the United States Printed String holder, but does not have the locking device of either. On the left-hand side, the bearing carries two things. On the inside, next to the spool, is a metal disk, with four lugs or splines on its face. This disk is held by a rotating pin in the bearings. The outer end of the bearing is threaded, and into it is screwed a bolt against the end of the rotating pin, to regulate the tension of the spool.

It is to be assumed that every one to whom a holder was given knew how to operate it. There are such differences between the ten-

318

sion device, in the narrow space between the legs of the mounting, at the right-hand side of plaintiff's holder, and the open, easily adjusted device on the top of the left-hand side of defendants' holder, that it seems quite impossible, for that reason alone, that any one could be deceived.

In figures 1, 2, 3, and 4, there is shown a twine guide, on top of the base in front, in plain view. In figures 1 and 2 the guide is a flat bar, about four inches long, with upturned ends. In figures 3 and 4 the guide is a round bar, the size of an old-fashioned slate pencil. Its ends are not turned up.

In figure 1, on the front of the long straight front, is a metal plate, on which, in large nickel faced letters, on a black background, is plaintiff's name and some advertising matter. There is not space for such a plate on figure 2, but plaintiff's name is shown on the front, in plain view, in gilt letters, on a red background. On the front of the base of figures 3 and 4, in black letters, on a gilt background, are the words "De Luxe Quality," and the name and address of defendants. One may not fail to use his senses and then say that he has been misled.

We are of opinion that the temporary injunction, granted on the order appealed from, should not, on authority of the following cases, have been granted: Maytag Co. v. Meadows Mfg. Co. (C. C. A.) 35 F. (2d) 403; Keller, Inc., v. Chicago Pneumatic Tool Co. (C. C. A.) 298 F. 52; Modern Grinder Mfg. Co. v. Dazey Churn & Mfg. Co. (C. C. A.) 22 F.(2d) 950; Postum Cereal Co. v. American Health Food Co. (C. C. A.) 119 F. 848.

The order for temporary injunction is reversed.