STEWART v. HUDSON.

(District Court, E. D. Pennsylvania. April 7, 1915.)

No. 1397.

TRADE-MARKS AND TRADE-NAMES ⬡⟳70—UNFAIR COMPETITION.

Complainant invented an automobile tool for which he applied for a patent. Pending action on his application he commenced manufacturing, and through extensive demonstrations and advertising quickly created a market. Defendant then commenced making and selling the same tool, practically identical in form and appearance, and also using complainant's cuts and other advertising matter. Held that, while defendant was within his legal rights in making the tool, his further acts in attempting to

⬡⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

take the business complainant had built up constituted unfair competition, which would be enjoined.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. ☞70.]

In Equity. Suit by Milton H. Stewart, trading as the Stewart Accessories Company, against William F. Hudson, individually and trading as the Ford Specialty Company. On motion for preliminary injunction. Granted.

Duane, Morris & Heckscher, of Philadelphia, Pa., for plaintiff.
Winfield S. Walker, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The plaintiff in this case claims to be the inventor of a tool which, as is the confident belief of every inventor, will work a revolution in its special field of operation. If his confidence is justified by the event, he will have produced something which will not only prove to be highly useful, but will bring balm to the troubled souls of that large army of amateur automobilists who daily struggle with punctured tires. Letters patent have been applied for, but have not as yet, and may not be, issued to him. In anticipation, however, of the grant of this right and of the harvest of profits which he believes is assured him, he made and placed his appliance upon the market. He prepared the usual form of literature, with cuts of his device, including illustrative pictures of his own hands applying the tool at its work. The introduction of his invention was made at the New York Automobile Show, where he gave ocular demonstrations of the efficiency of the tool, and generously distributed his literature. He repeated this at the Philadelphia Show. He also advertised in the trade journals, the advertisements exhibiting cuts and illustrations of how the tool was used. He further employed a small army of demonstrators to go to the centers of the automobile trade to show to the automobile public and middlemen the merits of his invention. His purpose was, of course, twofold—to create a demand among automobile owners and convince dealers of the value of the tool, so that they would lay in a supply to meet the customers' demands. His outlay for these purposes was large. Through the exploitation of his device, and the novelty, efficiency, and simplicity of the tool itself, instant recognition of its merits was given, and it became at once known, and acquired, not only a reputation as a good thing, but became known as the plaintiff's special make of tool.

Among others to whom he gave a demonstration of the efficiency of the tool while he had it on exhibition in Philadelphia was the defendant, who was in the business of selling automobile accessories. The defendant provided the plaintiff with a place in which to carry on his educational and advertising demonstration. The result was that the defendant arranged to supply his own customers with the plaintiff's make of tool, and orders were placed with the plaintiff for a supply as fast as they could be manufactured and shipped. A further, and by the plaintiff unexpected, consequence was the defendant had the device made for sale on his own account. The tool which he thus had made

was an exact fac simile of that made by the plaintiff, with two unnoticeable variations, which may be merely variations, or possibly may be deemed additional features. There was also a deceptive change in the name cast upon the implement. The defendant began at once to exploit the tool by advertisements, making use for this purpose of copies of the cuts which the plaintiff had put out. So promptly and expeditiously was this done that in some of the advertising mediums he was in time ahead of the plaintiff. So slavish is the copy of device and advertisements, the inference is irresistible that the defendant must have handed over the plaintiff's make of tool and his advertisements as models to be exactly reproduced. In this respect a case of unfair trade is made out beyond successful denial. There is, and can be, no doubt of the fact that the defendant has taken the plaintiff's device, reproduced, and is selling it on the market which the plaintiff has called into being.

It is not within our province to pass judgment upon the business ethics of the defendant's conduct, unless there has been a trespass upon the plaintiff's legal rights. Every claim of right must have a basis upon which it rests. A claim to legal protection from encroachment by others upon the right to sell a particular device or make of product must rest upon a statutory proprietary right to sell the thing itself, or upon the common-law right to prevent the goods of one from being palmed off upon purchasers as the goods manufactured by another. As applied to the conditions of this case, the one basis of claim presupposes an exclusive right to the device as the invention of the plaintiff; the other assumes the existence of a demand for the particular make of tool as manufactured by him. The argument for the defense in substance is that the plaintiff can lay no claim to control the sale of the device as his invention, because he has not protected it by a patent, and that he has no common-law right in his particular make of tool, because there has not been time for the public to have learned of his particular make, and to have any make of tool known on the market as his tool; in other words, that an infraction of such common-law right involves the thought of deception, and the plaintiff's make of his device has been so short a time before the public that his make as such is unknown to the general public, among whom, in consequence, there cannot be said to be any demand, and that the trade and the middlemen cannot be deceived, because they buy direct from the manufacturers, whose different makes are in consequence known to them.

The fact as to the statutory proprietary right is found with the defendant, and this branch of the argument in his favor must therefore prevail. The other fact cannot, however, be found for him. In the first place, the introduction of the automobile has not only greatly quickened transportation, but, because of the rapid development of the automobile business itself, it has produced such an alertness of mind toward everything connected with it, and a readiness and willingness to accept and adopt novelties, that there is the same relative difference in the speed with which the reputation of builders and others may be acquired and lost, and good wills grow up and decline. Moreover. the question of time relates more to the extent of the market and its value than to the fact of a market, and, in consequence, more to the

amount or extent of the damage done by the encroachment upon it than to the kind of injury done or the fact that injury has been done. A limited market or a modest reputation acquired by a manufacturer for his own particular product is as much entitled to protection as if it were more enlarged or wider spread. Imitation of another's make or brand of manufactured product is as sincere a form of flattery in business affairs as imitation is in other things, because it implies an acknowledgment that the make of goods copied has created a market, and this acknowledgment is evidence of the fact in itself. We therefore find that the plaintiff has created and had acquired a right to the good will or trade property indicated, and that the defendant has trespassed upon this right by intercepting and directing this trade to himself.

Had the defendant contented himself with merely appropriating the inventive idea or features of this appliance, he could not have been convicted of any trespass upon the legal rights of the plaintiff. When, however, he went further, and in addition to the device itself he imitated the very form and shape and appearance of plaintiff's make, and copied also the advertisements, cuts, and illustrations by means of which plaintiff had introduced it to the public, and by which characteristics it had become known as the plaintiff's manufacture, he was guilty of unfair trade, from which he should be required to desist. The slight departure in defendant's marking of the tool made by him from that made by the plaintiff carries the conviction, not that the defendant was seeking to distinguish his make, but that the similitude was meant to deceive, and that the defendant was guiltily conscious of it. Since the output of his first make of tools and of his first advertisements, the defendant has made changes in the latter and in the literature issued, which goes a little toward lessening the deception. He does not, however, go far enough, and plaintiff has the right to a preliminary injunction. It must, however, be expressly limited to enjoining the defendant from selling or advertising such make of the tool in question as may be imposed upon intending purchasers as the make of the plaintiff.

Counsel may submit drafts of a form of decree embodying these views, together with the form of bond required, and a decree will then be entered.