## THAYER TELKEE CORPORATION v. DAVENPORT–TAYLOR MFG. CO.

District Court, S. D. New York.
Dec. 15, 1930.

Hammond & Littell, of New York City, for plaintiff.

Seward Davis, of New York City, for defendant.

COXE, District Judge.

This is a motion for a preliminary injunction. The action is for patent infringement and unfair competition. The patents sued on are 1,740,048, issued December 17, 1929, for improvements in keyboards to hold keys, and particularly "a new type of hook strip" for retaining keys, and 1,770,327, issued July 8, 1930, for improvements in drawer cabinets for use in filing keys.

The defendant was formerly sales agent of the plaintiff in the exclusive distribution

of the plaintiff's products in the United States, east of Denver, under a five-year agreement, terminable for "any good and sufficient cause." This agreement was terminated by consent on June 1, 1929, and immediately thereafter the defendant commenced the manufacture and sale of a full competing line of keyboards and key cabinets in all respects substantially similar to the products it had previously sold for the plaintiff.

The plaintiff's products have always been marketed under the trade-mark "Telkee", and the different articles manufactured by the plaintiff contain a small gilt plate with the name and address of the plaintiff and "Telkee" appearing thereon in moderate sized letters. Similarly, the defendant's cabinets and keyboards have a small gilt panel painted on the cover or front, about one-third the size of the plaintiff's plate.

At the time of the termination of the sales agreement on June 1, 1929, the application for patent 1,740,048 was still pending in the Patent Office, the patent itself not issuing until December 17, 1929. The second patent, 1,770,327, issued July 8, 1930, on an application filed January 29, 1930. Immediately upon the issuance of this latter patent, No. 1,770,327, the defendant withdrew from the market its drawer cabinet in various sizes, in which plaintiff's hook strips were utilized, and no opposition is made now to the issuance of a preliminary injunction with respect to such cabinets. The defendant insists, however, that the wall cabinet it is now selling is not an infringement of the plaintiff's patents, for the reason that the key hooks are formed by punching narrow tongues from the front panel of the keyboard, and are not integral parts of the label pocket strips. It is also contended that the patents are void for anticipation and lack of invention; and in substantiation of these defenses many patent references as well as a number of alleged prior uses are disclosed in the answering papers.

In view of this showing, I do not think the case is one for the issuance of a preliminary injunction for patent infringement. Simson v. Blancard (C. C. A.) 22 F.(2d) 498; Boyce v. Stewart (C. C. A.) 220 F. 118. The case stands differently, however, with respect to the charge of unfair competition, and on that branch of the litigation I am satisfied that the plaintiff is entitled to preliminary relief. Enterprise v. Landers (C. C. A.) 131 F. 240; Rushmore v. Manhattan (C. C. A.) 163 F. 939, 19 L. R. A. (N. S.) 269; Yale & Towne v. Alder (C. C. A.) 154 F. 37;

Wesson v. Galef (D. C.) 286 F. 621; Crescent v. Kilborn (C. C. A.) 247 F. 299.

The defendant has not only adopted the plaintiff's cabinet, but has copied with substantial accuracy the style and general appearance of the plaintiff's product. The peculiar construction of the hinges, the overlap of the cover, and the arrangement of the locking hasps, have all been duplicated exactly. Furthermore, the entire line has been reproduced almost identically in the different sizes and key ranges of the defendant. There is nothing functional in these similarities, nor is there any satisfactory utilitarian reason why key cabinets should be manufactured in such sizes as 8½″ x 10″ x 2″ or 18″ x 28″ x 4″, or with numbers of hooks ranging from 30 to 1,200. I do not think, therefore, that Marvel v. Pearl (C. C. A.) 133 F. 160, 161; Meccano v. Wanamaker (C. C. A.) 250 F. 450; and Maytag v. Meadows (C. C. A.) 35 F.(2d) 403, are applicable. The only adequate explanation I can find for this almost exact reproduction of nonfunctional features is that the defendant set out deliberately to appropriate the business of the plaintiff's customers. And that it is in a fair way to do so, unless prevented by injunction, is reasonably clear from the affidavits submitted on this motion.

The situation is further aggravated because of the relation previously existing between the parties, as it can hardly be doubted that a former customer of the plaintiff, who dealt through the defendant during the existence of the sales agency, would be completely deceived by the appearance of the defendant's present cabinet, and would probably believe it to be of the plaintiff's construction. And the presence of the defendant's name and address on the cover would hardly indicate the origin of the product, but would serve merely to mislead the customer into thinking the sales relation was still in force.

In Standard Typewriter Co. v. Standard Folding Typewriter Sales Co., 181 F. 500, Judge Noyes, writing for the Circuit Court of Appeals in this circuit, held that a sales agency, similar in some respects to the one shown in this case, was the equivalent of public acquiescence to support a preliminary injunction in a patent suit on an unadjudicated patent; and, although that decision is not to be considered an authority on the point under discussion here, it does go a long ways to sustain the proposition that it would be grossly unfair to permit a sales agent, upon the termination of his agency, to reproduce almost exactly his former principal's goods, and

then go after the customers he had previously canvassed while acting as agent, in an attempt to appropriate his former principal's business.

I think, therefore, the plaintiff is entitled to the preliminary injunction on the ground of unfair competition; and an order to that effect may be submitted on notice.