**NATIONAL MACHINE WORKS, Inc., et al. v. HARRIS et al.**

Civ. No. 3140.

District Court, W. D. Oklahoma.

Sept. 26, 1947.

Robert F. Davis (of Stevens, Davis & Miller) of Washington, D. C., and D. I. Johnston (of Keaton, Wells, Johnston & Lytle) of Oklahoma City, Okl., for plaintiffs.

Charles M. McKnight, of Tulsa, Okl., and John H. Bruninga, of St. Louis, Mo. (Edgar Fenton (of Looney, Watts, Fenton & Bill-ups), of Oklahoma City, Okl., of counsel), for defendants.

VAUGHT, District Judge.

On July 27, 1946, Theodore C. Gerner filed this action to enjoin the defendants from infringing his Letters Patent No. 2,403,520 issued on a "Drive Shaft Bushing Assembly" on July 9, 1946. On August 31, 1946 Theodore C. Gerner assigned all his right, title and interest in the patent to the plaintiff National Machine Works, Inc., and on November 2, 1946 an amended complaint was filed by the National Machine Works, Inc., seeking the same relief. Later Theodore C. Gerner was again made a party plaintiff. In addition to seeking an injunction against infringment of the patent, the plaintiffs also allege unfair business practices upon the part of the defendants and seek an accounting.

The defendants filed an answer and amended answer and set up the following defenses and claims: 1. They deny that they infringe the plaintiffs' patent. 2. They allege that the plaintiffs' patent is invalid as it is the application of an old device to a new use. 3. That the patent is invalid as an aggregation. 4. The patent is invalid over the prior art. 5. That the plaintiffs have misused the patent in suit. 6. That the plaintiffs are guilty of unfair competition in trade. 7. That the patent is invalid for failure to file supplemental oath. 8. They deny that they are guilty of unfair competition in trade.

There are two facts to be determined which control all the other questions raised, except the seventh contention of defendants which will be taken up in the course of the opinion.

First. Is the device of the plaintiffs a patentable article?

Second. If the device of the plaintiffs is a patentable article, does the device of the defendants infringe the patent?

The facts are largely undisputed and cover quite a long course of conduct. In 1943, Theodore C. Gerner was an automobile mechanic. He possessed a limited education, but had an inquiring mind. He maintained a small shop at his home where he experimented with ideas of a mechanical nature. His work on Chevrolet cars called for the repair of worn propeller shafts and assemblies thereof. He gave a clear and understandable description of how that was done, in his testimony as follows:

"Q. Will you just briefly explain to the Court how you did that? A. Well, at that time, in order to repair a Chevrolet propeller shaft, it was necessary to remove the complete rear end with its wheels from underneath the car; completely disassemble the differential, rear gear, the differential,

and pinion; take it completely apart, and then remove the bushing, the old bushing, taking the entire shaft, by driving it out and the seals, then replacing with a new seal and new bushing and a new propeller shaft, and then completely assembling the differential, running gear, and the pinion, and axle shaft, and putting the assembly back under the car.

"Q. How long would it usually take to do that? A. Approximately five to six hours." (R. 41.)

Sometime in 1943 Gerner started to work and experiment on a device to eliminate the tearing down and complete removal of the differential from underneath the car and drive shaft. His idea was, to make a device that could be installed in the front end of the propeller shaft housing to support the propeller shaft without a removal of that complete assembly.

Sometime in August 1944 the defendant Jack L. Harris called upon Gerner one evening at the Gerner home and told him that a Mr. Brandon had informed him that Gerner was thinking of going into the manufacturing business; that he was then a traveling salesman for automotive parts and was thinking also of going into some kind of business. Gerner advised him it would take $10,000 to start any kind of a business and Harris told him he was not interested in putting $10,000 in a business. Soon after this, in early September, 1944, Harris called on Gerner at his place of business and asked if Gerner had anything saleable in which he might be interested. Up to that time Gerner had never discussed his repair device with any one. During their conversation, Gerner showed the drawings and sketches of his repair device to Harris. Harris immediately became interested and wanted to take the device out on his territory and try to sell it. Early in October, Gerner made a model of the device, and Harris took it out on his territory and found it was saleable, securing several orders for the device. Harris began to press Gerner for an exclusive sales contract which resulted in a written contract between Gerner and Harris under date of November 16, 1944. This contract specifically provided the following:

"That Theodore C. Gerner, of Oklahoma City, Oklahoma, the owner of the inventive idea and a patent pending on a propeller shaft bushing assemblies, hereinafter referred to as the party of the first part, and Jack L. Harris of Oklahoma City, Oklahoma, hereinafter called the party of the second part, stipulate and agree as follows: to-wit:

"1. For and in the consideration of $1.00 and other valuable consideration the party of the first part does by these presents assign, set over and convey to the party of the second part all exclusive rights to sell all of the articles described as a propeller shaft bushings assemblies, any improvement made on the patent right, or all other articles which the parties to this agreement may invent, manufacture or cause to be manufactured during the life of the patent or any period of renewal thereof.

"2. It is the intent of this assignment to give to the second party all exclusive rights to sell said articles described as a propeller shaft bushings assemblies and all propeller shaft bearings and seal assemblies and all propeller shaft housing repair units or assemblies and transmission housing part or parts that may be invented and/or manufactured by the party of the first part, in the United States, its territories and all other countries of the world."

\* \* \* \* \* \*

"5. The party of the first part agrees to do all things necessary in the completion and maintaining the patent on said propeller shaft bushings assemblies and all other parts during the life of this contract."

Gerner and Harris began their preparations to operate under the contract. Harris proceeded to prepare labels, catalogue material, et cetera. In the early part of January, 1945, Gerner procured the services of the Calhoun Hydraulic Equipment Company, a partnership composed of the defendant B. T. Calhoun and his brother, Ingram Calhoun, to manufacture some of the devices. Gerner turned over to Ingram Calhoun the complete drawings and specifications of his device, and several hundred units were made and delivered to him by that organization. Harris, under the supervision of Gerner, prepared instruction

sheets for installing the device in the cars. In the meantime, Gerner was corresponding with the Charter Institute of American Inventors, in which he held a membership. He had sent that institution his sketches and drawings and by so doing, believed he was pursuing the proper procedure of applying for a patent. The Charter Institute of American Inventors subsequently returned to Gerner the material which he had sent them with the information that they did not render services in procuring patents. Gerner then took the matter up with O'Brien and Jacobson, patent attorneys in Washington, D. C., and through their services procured Letters Patent No. 2,403,520 involved in this action. Gerner's first application for the patent was filed July 23, 1945. The patent was finally issued on July 9, 1946. Gerner and Harris operated under their contract of November 16, 1944 until some time in the latter part of 1945 when suit was instituted in the District Court of Oklahoma County, Oklahoma, in Cause Number 111,515 by the defendant Jack L. Harris against Gerner for an accounting. The evidence discloses that the parties had never been in accord as to the compensation Harris was to receive, and that there was continually a dispute as to that feature of the contract. In that suit the court, on March 14, 1946, rendered judgment that paragraph 3 of the contract had never become effective or operative between the parties and that Harris was entitled to a commission of 7½ per cent. on all net sales made by him through manufacturers' agents, and 15 per cent. on all other net sales. Up to the time of the judgment, Gerner had paid Harris $5,082.78 on account; after the judgment, Gerner paid Harris in compliance therewith, $8,813.32. The judgment cancelled the contract between the parties as of April 1, 1946 and the judgment became final. The evidence discloses that as early as December, 1945, Harris was planning on going into the market with a repair unit in competition with Gerner, and was making it known to the trade. The defendant B. T. Calhoun, in February, 1946, procured C. B. Heim to make two bushings which it is stipulated "except for the oil groove, were the same as the bushings now being manufactured for H-C Products Company." After April 1, 1946 the defendants began to manufacture and sell their device to the trade throughout the United States where the Gerner device was sold and distributed, in competition with the plaintiffs. The plaintiffs immediately notified the trade that the defendants were infringing their patent.

The Gerner device, for which patent No. 2,403,520 was issued, is designated as "Drive Shaft Bushing Assemblies." The patent discloses 14 claims, in each of which it is designated as "a repair unit insertable in said end of said housing." Without attempting to go into the mechanical and technical details of the bushing assembly, there is no dispute in the evidence but that the device was designed to repair Chevrolet automobiles and GMC trucks and is used for that purpose alone. It provided a new and novel way of repairing the cars, that resulted in a greatly reduced cost in time, labor and materials. When it was put on the market it met with instant approval and demand by the trade. But counsel for the defendants contend that the Gerner device was not patentable, and as an argument, they introduced 14 patents issued from June 4, 1867 to August 18, 1937, presumably to show prior art. These patents and their claims have been carefully examined, as no doubt the proper officials in the United States Patent Office did before issuing the patent in the Gerner device. When all of these exhibits are analyzed, they are each assemblies of bushings, bearings, rings, et cetera, which make a unit, for the purpose in mind at the time, and as so assembled were new and novel to the public and performed a useful purpose. None of them was thought of, or designed to, effect the repair of automobiles in the manner designed by Gerner.

■ Is such an assembly of bushings, as shown by the Gerner device, patentable? The United States Patent Office, manned by experts in determining the very question here, had concluded that it is patentable and has issued the patent. While it is true that the courts are not bound by that action, it is also true that such action is very persuasive and should not be set aside un-

less it is clearly erroneous. The authorities agree upon this principle.

In Hall v. Montgomery Ward & Co., D.C., 57 F.Supp. 430, 439, the court said: "* * * While, of course, the judgment of the Patent Office officials is not absolutely binding on the Court, it is entitled to great weight and is to be overcome only by clear proof that they were mistaken, and that there is lack of patentable novelty. (Citing authorities.)

\* \* \* \* \* \*

"When Congress has set up an administrative agency to whose informed judgment and discretion it has committed the determination of questions of fact, such determinations will not be set aside by the Courts if there is evidence to support them. Even though, upon a consideration of all evidence, a Court might reach a different conclusion, it is not authorized to substitute its own for the administrative judgment. Swayne & Hoyt v. United States, 300 U.S. 297, 303, 57 S.Ct. 478, 81 L.Ed. 659."

In Polaroid Corporation et al. v. Clark et al., App.D.C., 159 F.2d 28, 29, the court said: "* * * moreover, a decision of the Patent Office officials should be, and is, given great weight and is overcome only by clear proof of mistake."

The Gerner device is a combination or assembly of old elements whereby a new and useful result is obtained. It is a new and useful repair unit that effects a repair in one hour instead of six or eight hours, at a greatly reduced expenditure, thereby producing a useful result to the trade and to the public.

In Skinner Bros. Belting Co. v. Oil Well Improvements Co., 10 Cir. 54 F.2d 896, 898, the principles of law governing such a situation were discussed as follows:

"Is this a patentable combination? It is said that all of the elements are old; this is true, but immaterial. * * * In that text-book of patent law, National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 8 Cir., 106 F. 693, 706, Judge Sanborn lays down the rule: 'A new combination of old elements, whereby a new and useful result is produced, or an old result is attained in a more facile, economical, and efficient way, may be protected by patent as securely as a new machine or composition of matter. * * *.'

"The patent in suit meets this test. It is said that no inventive genius, but only mechanical ingenuity, was needed to think of this device. No formula has been prescribed which affords a solution of the vexed question, Has inventive genius been exercised? We know that the simplicity of the device does not belie inventive genius. Hughes Tool Co. v. International Supply Co., 10 Cir., 47 F.2d 490, 492, and cases there cited. We know that we should try to eliminate 'hindsight'; we know that the fact that the problem existed, that financial reward awaited a solution, and that no one did think of it, is strong evidence of invention. We know a presumption of invention arises from the issuance of the patent, and that commercial success strengthens that presumption. Considering these things, we are not prepared to say that this device, simple though it is, does not disclose inventive genius.

"It is said that it is an aggregation and not a combination; that the guide spools operate in the same way that they have always operated; and so of the other elements. This is true, but not fatal, for it is not necessary to a valid combination that one element shall affect the quality of the work done by another. It is said that the elements are but hitched together, and therefore are not patentable. Nor is this the test. The test is whether the combination discloses a co-operation or a co-ordination of the elements which, working together as a unit, although mayhap not simultaneously, produces a new or better result. The distinction between combination and aggregation is one difficult to put in words that really define; it has been the subject of much legal literature which we find it unnecessary to review. * * *."

In Williams Iron Works Co. v. Hughes Tool Co., 10 Cir., 109 F.2d 500, 506, the court said: "A new combination of old elements whereby a new and useful result is obtained, or whereby an old result is obtained in a more facile, economical, and efficient way is patentable, provided the

discovery and reduction to practice of the novel combination require greater skill and higher thought than would be expected of an ordinary mechanic trained in the art."

In a very early case that has been continuously followed, the principle was well expressed in Corning et al. v. Burden, 56 U.S. 252, 268, 15 How. 252, 268, 14 L.Ed. 683, in these words: " * * * It is for the discovery or invention of some practicable method or means of producing a beneficial result or effect, that a patent is granted, and not for the result or effect itself. * * * "

■ Measured by these authorities the court is convinced that the Gerner device is a patentable device and that the Letters Patent No. 2,403,520 issued on July 9, 1946, is a valid patent in every respect and is entitled to protection.

■ The defendants contend, however, that the patent is invalid for failure to file a supplemental oath in the prosecution of the patent application. Counsel have cited a number of authorities to support that contention, but under the facts in the instant case they are not in point. There is no new matter in the amended application, only an amplification of the old matter which under the statute required no supplemental oath.

Having determined that the patent is valid, it must now be determined whether the device of the defendants infringes the patent. Under the stipulation of counsel for the defense, the proposition is very much simplified. The defendants admit the following:

"(1) That prior to the filing of the complaint herein, and subsequent to the issuance of the patent in suit, defendants sold to distributors and jobbers the devices shown by plaintiffs' Exhibits 12 and 13, and that these devices were respectively sold in boxes illustrated by plaintiffs' Exhibit 16-A and 16-B, which contain the instruction sheets, Plaintiffs' exhibit 15.

"(2) That prior to the filing of the complaint in this cause, and subsequent to the patent in suit, the defendants issued to the trade, including distributors and jobbers, catalogue sheets exemplified by plaintiffs' Exhibit 14.

"(3) That prior to the filing of the complaint there, and subsequent to the issuance of the patent in suit, defendants' devices as illustrated by plaintiffs' Exhibits 12 to 13 were installed in the manner described by the witness Gerner." (R. 135.)

Counsel for the plaintiffs in their brief have summed up the differences in the two devices in an accurate and concise statement of the facts as follows: "The only differences are (1) that the H-C Bushing Assembly is cast as a unit, instead of being made as several parts and assembled; (2) that the H-C Bushing Assembly is made of brass, except for the oil seal, whereas the Gerner Bushing Assembly is made of steel and bearing metals; and (3) that the H-C Bushing Assembly has a differently arranged oil groove." (P.69)

It is apparent that the H-C Bushing device is almost a slavish copy of the Gerner device. The form is slightly different and the metal used is different, but the original idea of Gerner is followed literally. Both devices are made to effect the same result and are not designed to be used for any other purpose. The evidence is clear that the defendant Harris, in his capacity as salesman of automotive parts, when he became acquainted with Gerner's device and his idea of the bushing assembly, at once saw its practical value and sought to, and did acquire, the exclusive sales privilege of the device. In his contract with Gerner of November 16, 1944 he acknowledged the fact that Gerner was the inventor of the device. Later in collusion with the defendant Calhoun, the defendant Harris determined to copy the device and compete with Gerner in the sale of the device. It was apparently believed by the defendants that the form of the device was sufficiently changed to obviate infringement, but such conclusion is not supported by a reasonable interpretation of the law.

■ In the early case of Winans v. Denmead, 56 U.S. 330, 341, 15 How. 330, 341, 14 L.Ed. 717, in discussing this principle of law, the court said:

"It is generally true, when a patentee describes a machine, and then claims it as described, that he is understood to intend to claim, and does by law actually cover, not

only the precise forms he had described, but all other forms which embody his invention; it being a familiar rule that, to copy the principle or mode of operation described, is an infringement, although such copy should be totally unlike the original in form or proportions."

\* \* \* \* \* \*

"Where form and substance are inseparable, it is enough to look at the form only. Where they are separable; where the whole substance of the invention may be copied in a different form, it is the duty of courts and juries to look through the form for the substance of the invention—for that which entitled the inventor to his patent, and which the patent was designed to secure; where that is found, there is an infringement; and it is not a defence, that it is embodied in a form not described, and in terms claimed by the patentee."

In Delta Manufacturing Co. v. E. L. Essley Machinery Co., 7 Cir., 153 F.2d 905, 906, 907, the court quotes the familiar rule as follows: " \* \* \* 'Two inventions are identical in substance if they perform substantially the same function or office in substantially the same way, and produce substantially the same result. They are not identical in substance if they accomplish substantially different results, or perform different functions, or if they perform the same function in a different way.' 48 Corpus Juris (1929), § 27. To the same effect are Seymour v. Osborne, 78 U.S. 516, 11 Wall. 516, 20 L.Ed. 33; Consolidated Roller Mill Co. v. Walker, 138 U.S. 124, 11 S.Ct. 292, 34 L.Ed. 920; Chicago Lock Co. v. Tratsch, 7 Cir., 72 F.2d 482; Nordberg Manufacturing Co. v. Woolery Machine Co., 7 Cir., 79 F.2d 685."

In Union Paper-Bag Machine Company v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935, the court said:

"Except where form is of the essence of the invention, it has but little weight in the decision of such an issue, the correct rule being that, in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result.

"Nor is it safe to give much heed to the fact that the corresponding device in two machines organized to accomplish the same result is different in shape or form the one from the other, as it is necessary in every such investigation to look at the mode of operation or the way the device works, and at the result, as well as at the means by which the result is attained.

\* \* \* \* \* \*

"Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape. Curtis, Patents (4th Ed.) sec. 310."

The conclusion reached here is inescapable. The device of the defendants is clearly an infringement of the Gerner Patent No. 2,403,520. Having reached that conclusion, there remains the question of unfair trade practices or unfair competition against the plaintiffs by the defendants. The courts have exercised much concern in protecting the rights of those who develop a trade or business from those who by unfair methods or sharp practices attempt to enrich themselves by appropriating the fruits of the labor and ingenuity of such developers, regardless of whether such trade or business is protected by trademarks or patents.

The case of Stewart v. Hudson, D.C., 222 F. 584, 586, in the judgment of the court, is squarely in point. Quoting from the opinion:

"* * * The defendant began at once to exploit the tool by advertisements, making use for this purpose of copies of the cuts which the plaintiff had put out. So promptly and expeditiously was this done that in some of the advertising mediums he was in time ahead of the plaintiff. So slavish is the copy of device and advertisements, the inference is irresistible that the defendant must have handed over the plaintiff's make of tool and his advertisements as models to be exactly reproduced. In this respect a case of unfair trade is made out beyond successful denial. There is, and can be, no doubt of the fact that the defendant has taken the plaintiff's device, reproduced, and is selling it on the market which the plaintiff has called into being.

* * * * * *

"Had the defendant contented himself with merely appropriating the inventive idea or features of this appliance, he could not have been convicted of any trespass upon the legal rights of the plaintiff. When, however, he went further, and in addition to the device itself he imitated the very form and shape and appearance of plaintiff's make, and copied also the advertisements, cuts, and illustrations by means of which plaintiff had introduced it to the public, and by which characteristics it had become known as the plaintiff's manufacture, he was guilty of unfair trade, from which he should be required to desist. * * *"

One has only to study the exhibits in the instant case to realize how closely the defendants have copied both the plaintiffs' patent, the advertisements and instructions in connection with the marketing of the patented device.

In the case of Thayer Telkee Corporation v. Davenport-Taylor Manufacturing Co., D.C., 46 F.2d 559, 560, the situation was similar to the case at bar. Quoting from the opinion:

"The defendant has not only adopted the plaintiff's cabinet, but has copied with substantial accuracy the style and general appearance of the plaintiff's product. * * * The only adequate explanation I can find for this almost exact reproduction of nonfunctional features is that the defendant set out deliberately to appropriate the business of the plaintiff's customers. * * *

"The situation is further aggravated because of the relation previously existing between the parties, as it can hardly be doubted that a former customer of the plaintiff, who dealt through the defendant during the existence of the sales agency, would be completely deceived by the appearance of the defendant's present cabinet, and would probably believe it to be of the plaintiff's construction. * * *

"In Standard Typewriter Co. v. Standard Folding Typewriter Sales Co. [2 Cir.], 181 F. 500, Judge Noyes, writing for the Circuit Court of Appeals in this circuit, held that a sales agency, similar in some respects to the one shown in this case, was the equivalent of public acquiescence to support a preliminary injunction in a patent suit on an unadjudicated patent; and, although that decision is not to be considered an authority on the point under discussion here, it does go a long ways to sustain the proposition that it would be grossly unfair to permit a sales agent, upon the termination of his agency, to reproduce almost exactly his former principal's goods, and then go after the customers he had previously canvassed while acting as agent, in an attempt to appropriate his former principal's business."

In Bayley & Sons, Inc., v. Braunstein Brothers Co., D.C., 246 F. 314, 318, the court summed up the situation there in this language: "Further, the court is of the opinion that the defendant is rightly chargeable with unfair competition. The plaintiff by industry and advertising has placed the Equalite upon the market successfully, and now the defendant has appropriated many of the features, nearly all, of the plaintiff's Equalite fixture. The plaintiff assembled the various parts together first and did so and produced them under the protection of its patent. The defendant's appropriation of this combination, and placing it upon the market, has been unfair and calculated to deceive the ordinary purchaser who would not be apt to discover the difference. His advertising it as his own product, after carefully copying it and differentiating it only under another name, is not suf-

ficient to relieve it of the charge of unfair competition. (Citing authorities.)"

■ The evidence, briefly stated, discloses this state of affairs. Gerner invented the Drive Shaft Bushing Assembly for which he was issued a patent. Prior to receiving his patent, he showed his invention to the defendant Harris. All the knowledge Harris acquired concerning the Gerner device was through Gerner while Harris was acting in a fiduciary capacity for Gerner. While acting in that fiduciary relation as exclusive sales agent for Gerner, Harris earned and was paid $13,896.10 for his services for a year and a half. During the period of employment as exclusive salesman, Harris deliberately planned to copy the Gerner device and appropriate the customers he had assisted in procuring for Gerner, thus enrich himself by making them customers of his own organization, known as H-C Products Company consisting of himself and his codefendant, B. T. Calhoun. The defendants used the knowledge Harris had gained of the customers of the plaintiffs by reason of his access to the accounts while acting in the close relationship of exclusive salesman. This, under the authorities, is unfair trade practices and unfair competition. The defendants have caused the plaintiffs to suffer much detriment by such conduct and should account to the plaintiffs for it.

It is the opinion of the court that Letters Patent No. 2,403,520 issued to Theodore C. Gerner and now owned by the plaintiff National Machine Works, Inc., is a valid patent; that the defendants are infringing the patent and should be enjoined from further so doing; that the defendants are guilty of unfair trade practices and unfair competition and should be enjoined from further engaging in them against the plaintiffs; and that a further hearing should be had herein to determine the damages the plaintiffs have sustained by reason of such infringement and unfair trade practices and unfair competition.

Findings of fact, conclusions of law and a form of judgment consistent with this opinion may be submitted within 15 days from this date.